UNITED STATES of America,
Plaintiff–Appellee,

v.

Otto PACE, Travis D. Leonard,
and Clifton Andrew Carter,
Defendants–Appellants.

Nos. 91–7059, 91–7060 and 91–7062.

United States Court of Appeals,
Tenth Circuit.

Oct. 28, 1992.

R. Jay Cook, Muskogee, OK, for defendant-appellant Pace.

Jill M. Wichlens, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her, on the briefs), Denver, CO, for defendant-appellant Leonard.

Don Ed Payne, Payne and Welch, Hugo, OK, for defendant-appellant Carter.

Paul G. Hess, Asst. U.S. Atty. (John Raley, U.S. Atty., with him, on the briefs), Muskogee, OK, for plaintiff-appellee.

Before LOGAN, ENGEL,* and KELLY, Circuit Judges.

LOGAN, Circuit Judge.

Defendants Otto Pace, Travis D. Leonard, and Clifton Andrew Carter were charged in a four-count indictment alleging violations of the federal drug laws. Count 1 charged all three defendants with a conspiracy with two objects: (1) to possess with intent to distribute "methamphetamine/amphetamine;" and (2) to attempt to manufacture "methamphetamine," in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count 4 charged all three defendants with traveling in interstate commerce to promote the attempted manufacture and distribution of "methamphetamine/amphet-

amine," in violation of 18 U.S.C. §§ 1952 and 2. Count 2 charged Carter with possession of a listed chemical to be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d)(2) and 18 U.S.C. § 2. Count 3 charged Leonard with distribution of "methamphetamine/amphetamine," in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. With one exception,[1] defendants were convicted as charged. Defendants' sentences were calculated from the base offense level for methamphetamine, which is higher than that for amphetamine.

On appeal, defendants' primary argument is that the use of the term "methamphetamine/amphetamine" in the indictment and the use of a general verdict form, which did not allow the jury to indicate whether it found the offenses to involve methamphetamine, or amphetamine, or both, made these convictions ambiguous and requires either a new trial or resentencing calculated from the lower base offense level for amphetamine. In addition, defendants individually raise a number of issues relating to sentencing and district court rulings.

I

After an investigation that lasted several months, law enforcement officers executed search warrants at Carter's home and business in Oklahoma. The items seized included laboratory glassware and equipment and chemicals, including acetic anhydride (AA) and approximately thirty-two pounds of phenylacetic acid (PA). At the time of the searches, the odor of PA or other chemicals was noted by officers at the premises of Carter's business, on men's clothing in Carter's home, on Carter's person and in his vehicle, and on Pace's person. Fingerprints of Pace, but not of Carter or Leonard, were found on some of the seized glassware. The searches did not reveal any methamphetamine or amphetamine.

---

* The Honorable Albert J. Engel, Senior United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. The jury was unable to reach a verdict as to defendant Leonard on count 4. This charge subsequently was dismissed by the government.

On several occasions before the search, Jarvis Wells—an unindicted coconspirator—and others acquired glassware and chemicals at Carter's direction. On one occasion, Wells traveled from Oklahoma to Arkansas to pick up fifty pounds of PA. In Arkansas, after taking delivery of the PA, Wells met Pace and Leonard, who had traveled from Oklahoma to Arkansas in a vehicle provided by Carter. Pace assisted in sifting the PA in an attempt to detect electronic devices. Pace and Leonard drove the PA back to Oklahoma. On another occasion, a chemical company in Arkansas notified Carter's business that other chemicals could be picked up. Pace then left a note for Wells that "the parts was in." IV R. 152. Wells discussed the purchase of AA with Carter and Pace, apparently while Leonard also was present. Wells then drove to the chemical company, picked up five gallons of AA, returned to Oklahoma, and delivered it to Leonard. Leonard indicated that Carter would get the AA.

At trial, a chemist testified for the government that the equipment and chemicals seized during the searches, including PA and AA, are associated with clandestine drug lab operation and can be used to manufacture methamphetamine. Another chemist testified that PA is a precursor chemical for the manufacture of methamphetamine. A police officer testifying for the government indicated that PA is a precursor chemical for the manufacture of both methamphetamine and amphetamine.[2] A second officer testified that AA is necessary for the manufacture of methamphetamine.

After the searches, and after Carter but not the other two defendants had been arrested, Leonard sold one ounce of methamphetamine to an undercover agent. This was the only quantity of either methamphetamine or amphetamine seized from any of the defendants.

Defendants' sentences were based on a chemist's testimony that fifty pounds of PA would produce about fourteen to twenty pounds of methamphetamine.[3] There was no testimony regarding the amount of amphetamine that could have been produced from the PA. Assuming that the fifty pounds of PA also would have produced fourteen to twenty pounds of amphetamine, under the sentencing guidelines each defendant's base offense level would have been two points lower if the calculation had been based on amphetamine rather than methamphetamine.[4] Basing defendants' sentences on amphetamine would have reduced Pace's sentence for count 1 and Leonard's sentences for count 1 and apparently for count 3.[5]

None of the defendants objected to the district court's use of a general verdict form. Likewise, none of the defendants

---

**2.** Another officer, not a chemist, testified that AA is "one of those precursors necessary for amphetamine, methamphetamine production," V R. 297, but the court sustained an objection to this testimony. Thus, the jury should not have considered it, and neither do we.

**3.** The chemist also testified that thirty-two pounds of PA, the amount actually seized at Carter's business, would produce about eight to twelve pounds of methamphetamine. The sentences were based on the 50 pounds of PA acquired in Arkansas, which included the seized 32 pounds and 18 pounds that were unaccounted for and presumably used before the searches.

**4.** Fourteen to twenty pounds is equal to 6.35 to 9.07 kilograms. Under U.S.S.G. § 2D1.1 (drug equivalency tables), one gram of amphetamine is equivalent to one gram of cocaine, while one

gram of methamphetamine is equivalent to five grams of cocaine. Pursuant to U.S.S.G. §§ 2D1.4(a) and 2D1.1(a)(3), and based on 6.35 to 9.07 kilograms of methamphetamine, defendants' base offense level was 34, see id. § 2D1.1(c)(5) (drug quantity table). If the sentences had been based on an equal amount of amphetamine defendants' base offense level would have been 32. See id. § 2D1.1(c)(6).

**5.** Pace's sentence as to count 4 and Carter's sentences as to counts 2 and 4 apparently would not be affected if the sentences were based on amphetamine because even with a two-point reduction in base offense level the lower guidelines sentencing range is still greater than the statutory maximum sentence for these offenses. Carter's sentence as to count 1 may be affected if he is resentenced based on amphetamine. Because sentencing is for the district court, we

objected to the presentence reports' use of methamphetamine and not amphetamine to calculate the base offense level.

## II

██ Because defendants did not object to the use of a general verdict or to the use of methamphetamine in the sentencing calculations, we will not consider these issues unless they "constitute[ ] plain error resulting in manifest injustice." *United States v. Taylor,* 800 F.2d 1012, 1017 (10th Cir. 1986), *cert. denied,* 484 U.S. 838, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987). We believe that they do constitute plain error, *see Newman v. United States,* 817 F.2d 635, 637 n. 3 (10th Cir.1987), and therefore we address the merits.

Defendants assert that the instant case is indistinguishable from and controlled by this court's opinion in *Newman.* In *Newman* the defendant had been convicted by general verdict of conspiring to distribute both narcotic *and* nonnarcotic drugs. *Id.* at 637. *See Griffin v. United States,* —— U.S. ——, ——, 112 S.Ct. 466, 473, 116 L.Ed.2d 371 (1991) (" 'when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged' " (quoting *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970))).

At that time, a conviction relating to a narcotic drug carried a fifteen-year maximum sentence, while a conviction relating to a nonnarcotic drug carried only a five-year maximum sentence. Because the use of the general verdict made it impossible for the sentencing court to know which maximum sentence was authorized, we held that the defendants' fifteen-year sentence could not stand, *Newman,* 817 F.2d at 639. Although other courts in similar circumstances have allowed the government the option of consenting to resentencing based on the offense carrying the lower maximum, we vacated the conviction and remanded for a new trial because "the uncertainty taints the conviction itself." *Id.*

Defendants also rely on *United States v. Owens,* 904 F.2d 411 (8th Cir.1990), which involved an indictment charging a drug conspiracy involving "methamphetamine/amphetamine." *Id.* at 412. In *Owens* the Eighth Circuit observed that "[t]he punctuation mark used between the words methamphetamine and amphetamine is called a 'virgule,' and ordinarily means 'or.' " *Id.* at 414. Thus, the indictment charged a crime "involving *either* methamphetamine *or* amphetamine." *Id.* Because there was conflicting testimony as to which drug was the object of the conspiracy, and because of the sentencing discrepancy between the two drugs, the Eighth Circuit held that the use of a general verdict "elicited an ambiguous verdict of guilty" that could not support the higher sentence based on methamphetamine. *Id.* at 414–15. The court gave the government the option of consenting to resentencing based on amphetamine or retrying the defendant.

The government's attempt to distinguish *Newman* because it was a preguidelines case and it involved narcotic and nonnarcotic drugs is unpersuasive. The government's attempt to distinguish *Owens* requires more analysis. It is true that count 1 in the instant case charges conspiracy: (1) to possess with intent to distribute "methamphetamine/amphetamine" *and* (2) to attempt to manufacture methamphetamine, while *Owens* did not include the latter object. Although the second object does not include the either/or wording of the first object, it does not clarify the first object's ambiguity. The government correctly points out that in *Owens* a laboratory analysis confirmed that two samples were amphetamine, 904 F.2d at 412 (in the instant case only methamphetamine was found), and that in *Owens* one witness testified that the object of the conspiracy was to manufacture methamphetamine while another testified the object was to manufacture amphetamine, *id.* at 414. At bottom, the government argues that in *Owens* the evidence was not clear as to which of the two drugs was involved,[6] while in the

---

do not decide these issues but leave them for the district court on remand.

**6.** A later Eighth Circuit case, *United States v. Watts,* 950 F.2d 508 (8th Cir.1991), *cert. de-*

instant case "the evidence was clear, uncontradicted, and overwhelming that the object of the conspiracy was to attempt to manufacture methamphetamine and to distribute methamphetamine." Brief of Appellee at 13. The government asserts that because there was insufficient evidence to support a conviction relating to amphetamine a special verdict was not required.

We have reviewed the trial transcript for references to methamphetamine, references to amphetamine, or references that are ambiguous. The government's position that this was a methamphetamine case is consistent with its opening statement: "Basically, this is a conspiracy case, a drug conspiracy. And the drug is methamphetamine, a Schedule II substance, as you'll find." IV R. 5. There was testimony that the chemicals seized at Carter's home and business can be used to make methamphetamine. V R. 415–17. The two chemists who testified for the government referred exclusively to methamphetamine on direct examination. One chemist testified that the substance sold by Leonard was identified as methamphetamine. V R. 414. The entire trial transcript, excluding opening statements and closing arguments, contains approximately ninety references solely to methamphetamine by either witnesses or lawyers asking questions of witnesses.

The transcript, however, also includes approximately thirty references to "dope" or "drugs," which might refer to either drug. There were a few references to both drugs, including that certain chemicals are "precursors that are used to manufacture amphetamine and methamphetamine," IV R. 34–35, that someone "showed some recipes to make methamphetamine or amphetamines," VI R. 511, and that a field test could not distinguish between amphetamine and methamphetamine, V R. 345–46. The court's jury instructions referred to the drugs by name only once: "In regard to the offenses charged in the indictment, amphetamine or methamphetamine are Schedule II controlled substances within the meaning of the law or statutes." VI R. 674. Furthermore, the trial transcript includes at least four references solely to amphetamine by either witnesses or lawyers asking questions of witnesses. *See* V R. 242, 249 (twice), 250.

■ Our review of the record convinces us that there was sufficient evidence to support convictions relating to methamphetamine. Although the record contains far fewer references to amphetamine, there are enough express or ambiguous references to amphetamine that we conclude there was also sufficient evidence to support convictions relating to amphetamine, except as to count 3. Count 3 charged Leonard with distribution of "methamphetamine/amphetamine." His conviction was based on his sale of one ounce of a substance later confirmed to be methamphetamine. Thus, there clearly was insufficient evidence that he distributed amphetamine.

■ Count 1 alleged a conspiracy involving two objects. We consider the indictment as having charged the two objects in the conjunctive. There was sufficient evidence to support convictions based on the second object, which was to attempt to manufacture methamphetamine. This is enough to sustain defendants' convictions on count 1. *See Griffin*, — U.S. at —, 112 S.Ct. at 473. The fact that count 1's first object used the ambiguous term "methamphetamine/amphetamine" does not require that the convictions be reversed. Because, however, the jury *might have* convicted defendants based on conspiracy to possess with intent to distribute amphetamine, we hold that defendants' sentences cannot stand.

*nied,* — U.S. —, 112 S.Ct. 1276, 117 L.Ed.2d 502 (1992), distinguished *Owens* as a case "where evidence at trial is not clear as to which of two alternative drugs were involved in a multi-drug conspiracy." *Id.* at 515. That does not, however, speak to whether the evidence in the instant case is clear. We also note that the *Watts* court itself acknowledged the existence of testimony about other drugs, apparently before the start of the conspiracy, *see id.* at 514, and we are not certain that on the same facts we would reach the same conclusion that the evidence was clear. Furthermore, *Watts* is distinguishable from the instant case because there "the indictment was an 'and,' not an 'or,' indictment," and thus "[t]he jury did not need to decide between the different drugs." *Id.* at 515.

■ Under count 2, Carter was convicted of possessing a listed chemical to manufacture a Schedule II controlled substance. The jury was instructed that both methamphetamine and amphetamine are Schedule II controlled substances. There was sufficient evidence to support a conviction based on either substance or both.[7] However, because the jury *might have* found the substance to be amphetamine, we hold that Carter's sentence on count 2 cannot stand.

■ Under count 3, Leonard was convicted of distributing methamphetamine *or* amphetamine. However, because the drug tested definitively as methamphetamine, there is a total lack of evidence that Leonard distributed amphetamine. We hold that the disjunctive charge does not demand a reversal of the conviction. We accept the reasoning of the Seventh Circuit, cited with approval in *Griffin*, —— U.S. at ——, 112 S.Ct. at 474, which recognizes a distinction between legal and factual sufficiency. *See United States v. Townsend*, 924 F.2d 1385, 1412–14 (7th Cir.1991). A disjunctive charge may result in jury error when one of the alternatives is legally inadequate. But when, as here, one of the alternatives in the disjunctive charge is unsupported by any evidence whatsoever, we can assume that jurors will reject the "factually inadequate theory," *Griffin*, —— U.S. at ——, 112 S.Ct. at 474, and convict based on "alternative grounds for which the evidence was sufficient." *Townsend*, 924 F.2d at 1414. Thus, we affirm Leonard's conviction on count 3.

■ Under count 4, Pace and Carter were convicted of traveling in interstate commerce to promote the attempted manufacture of methamphetamine *or* amphetamine. There was sufficient evidence to support convictions based on both substances. However, because the jury *might have* found the substance to be amphetamine, defendants' sentences on count 4 cannot stand.

In summary, Leonard's conviction on count 3 is affirmed. We affirm the convictions on counts 1, 2 and 4 subject to the condition that the government consents to resentencing calculated from the base offense level for amphetamine; if the government does not so consent, the district court is directed to vacate the convictions and order a new trial.[8]

### III

■ Defendant Leonard asserts his trial counsel provided ineffective assistance by failing to object to an alleged error in his criminal history calculation. The presentence report assigned one point each for a drug paraphernalia conviction and a driving under the influence conviction. Leonard now argues that his trial counsel's failure to discover and inform the district court that these were related cases that should have been treated as one sentence in determining criminal history, *see* U.S.S.G. § 4A1.2(a)(2), constituted ineffective assistance of counsel.

Our general rule is that "a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court." *Beaulieu v. United States*, 930 F.2d 805, 807 (10th Cir.1991). Although there are exceptions for "situations where the defendant is no longer represented by trial counsel and it is evident that resolution of the ineffectiveness claim would not be substantially aided by further development of the

---

7. The district court's use of the word "or" when referring to the two drugs in its instructions is without significance.

8. This disposition follows the procedure of several cases from other courts which have considered this question. *See Owens*, 904 F.2d at 415; *United States v. Orozco–Prada*, 732 F.2d 1076, 1084 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984). Although the particular facts in *Newman* led to "uncertainty" surrounding the convictions themselves, *New-*

*man*, 817 F.2d at 637 ("the sentencing court cannot know for certain whether the ... sentence for the narcotics or only ... for the non-narcotic drugs is authorized"), no such facts exist here. We are satisfied that the uncertainty does not taint the basic conviction in this case.

Our disposition of the conspiracy charge moots defendants' assertion that the trial court improperly determined the base offense level for the conspiracy on the assumption the conspiracy involved methamphetamine.

record," *id.* at 807, the record on appeal here contains no information from which we can determine whether the transactions involved were part of the same course of conduct or common scheme or plan. Furthermore, the record does not contain information from which we can ascertain whether trial counsel's conduct met the two-prong *Strickland* test of ineffectiveness of counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (defendant must show counsel's performance was deficient and that such performance prejudiced his defense). Because we have remanded for a new trial or resentencing, defendant Leonard will have the opportunity to raise the issue of his proper criminal history category. Thus, we reject the ineffective assistance claim because the alleged deficient performance by trial counsel has not resulted in prejudice to Leonard.

## IV

### A

 Defendant Carter challenges the district court's finding that he had two or more prior convictions for felony drug offenses, thus subjecting him to a mandatory term of life imprisonment without release under 21 U.S.C. § 841(b)(1)(A)(viii).

In 1978, Carter was convicted of one count of conspiring to manufacture, possess and distribute marijuana, based on twenty alleged overt acts, including that (a) in January 1977 Carter purchased two hundred pounds of marijuana, (b) in March 1977 he purchased two hundred pounds of marijuana, (c) in April 1977 he purchased four hundred pounds of marijuana, (d) in June or July 1977 he possessed two hundred pounds of marijuana, and (e) on August 12, 1977, he possessed an unspecified amount of marijuana. Defendant also was convicted of the listed overt acts as substantive offenses.

Whether these offenses count as multiple convictions requiring, upon conviction, that Carter be sentenced to life imprisonment without release was raised at sentencing when the government filed an information pursuant to 21 U.S.C. § 851 and § 841(b)(1)(A)(viii). 21 U.S.C. § 841(b)(1)(A) provides in pertinent part: "If any person commits a violation of this subparagraph or of section 405, 405A, or 405B *after two or more prior convictions for a felony drug offense have become final,* such person shall be sentenced to a mandatory term of life imprisonment without release...." (emphasis added). Defendant asserts that because his prior felony drug offenses were "related," and based on a single indictment and single trial they therefore constituted only one conviction. The district court rejected Carter's argument and imposed the mandatory life imprisonment term.

We have not heretofore interpreted the mandatory life enhancement provision of § 841(b)(1)(A).[9] Two cases from other circuits addressing § 841(b)(1)(A) are instruc-

---

**9.** We have recently addressed the provisions of two somewhat similar statutes. In *United States v. Abreu,* 962 F.2d 1447 (10th Cir.) (en banc), *petition for cert. filed,* 61 U.S.L.W. 3060 (U.S. July 9, 1992), we considered the § 924(c)(1) provision for a sentence enhancement for use of a firearm "in the case of [a] second or subsequent conviction." In *Abreu,* we held that the phrase "second or subsequent conviction" was ambiguous, and that the enhancement was proper only if the underlying offense was committed after a judgment of conviction on the prior offense. *See Abreu,* 962 F.2d at 1453–54. In *United States v. Bolton,* 905 F.2d 319 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991), we applied the § 924(e) enhancement for a defendant convicted of possession of a firearm who has "three previous convictions ... for a violent felony or

serious drug offense or both, committed on occasions different from one another." 18 U.S.C. § 924(e). In *Bolton* we determined that simultaneous convictions for four robberies on different dates constituted multiple convictions for purposes of § 924(e). *See also United States v. Samuels,* 970 F.2d 1312, 1315 (4th Cir.1992) (drug felonies committed on consecutive days but tried together constitute two separate convictions for purposes of § 924(e)(1) enhancement); *United States v. McDile,* 914 F.2d 1059, 1060–61 (8th Cir.1990) (convictions for drug sales over two month period constituted separate criminal episodes and supported enhancement under § 924(e)(1)), *cert. denied,* — U.S. —, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991).

Neither *Abreu* nor *Bolton* controls here, of course, because of differences in the statutory language.

tive, although each deals with a fact situation different from the instant case. In *United States v. Hughes*, 924 F.2d 1354, 1360–61 (6th Cir.1991), the Sixth Circuit applied a "separate criminal episode" test and determined that the defendant's prior state conviction constituted a prior conviction for purposes of § 841(b)(1)(A). In *United States v. Blackwood*, 913 F.2d 139, 145 (4th Cir.1990), the Fourth Circuit determined that the defendant's state convictions on two indictments for possession with intent to sell marijuana, when the offenses occurred within two hours of each other, constituted a single act of criminality, and, therefore, one prior conviction for purposes of § 841(b)(1)(A). Although *Hughes* resulted in upholding the § 841 enhancement and *Blackwood* did not, the two cases made a similar inquiry: did the prior offenses constitute separate criminal episodes or a single act of criminality. We adopt this view as the most reasonable interpretation of the statute, recognizing that in a particular case this test may produce the harsh result that a defendant is sentenced to mandatory life on his second drug prosecution.

 Defendant Carter was convicted of five separate substantive counts of possession of large quantities of marijuana based on events occurring over a six-month period. Although prosecuted in one case, defendant's prior substantive offenses constitute separate "criminal episodes that occurred at distinct times." (emphasis omitted). *Cf. Blackwood* at 147. We reject Carter's argument that because the substantive offenses also were alleged as overt acts in support of the conspiracy they were not separate criminal episodes. Conspiracy is a crime separate from the substantive violation; *see United States v. Hill*, 971 F.2d 1461, 1467 (10th Cir.1992) (en banc) ("[t]he agreement to do an unlawful act is ... distinct from the doing of the act.") (quoting *Pinkerton v. United States*, 328 U.S. 640, 644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946)). Thus, if on remand at sentencing the court finds § 841(b)(1)(A) applicable it may consider the 1978 convictions as "two or more prior convictions for a felony drug offense."

**B**

 We also reject Carter's argument that the district court erred in sentencing him separately on each count rather than grouping multiple counts for sentencing purposes under U.S.S.G. § 3D1.1 and 3D1.2(d). The district court applied the provisions of § 3D1.1 and § 3D1.2(d) to determine the offense level on the multiple counts. Once the trial court determined the offense level, it applied § 5G1.2(c) in establishing the sentence based on the offense level. *See* §§ 3D1.1 & 3D1.2; 3D1.1 Commentary Background ("§ 5G1.2 deals specifically with determining the sentence of imprisonment when convictions on multiple counts are involved."); § 3D1.5 ("Determining the Total Punishment: Use the combined offense level to determine the appropriate sentence in accordance with the provisions of Chapter Five"). The Commentary to § 5G1.2 explains that

This section specifies the procedure for determining the specific sentence to be formally imposed on each count in a multiple-count case. The combined length of the sentences ("total punishment") is determined by the adjusted combined offense level. To the extent possible, the total punishment is to be imposed on each count. Sentences on all counts run concurrently, except as required to achieve the total sentence, or as required by law.

This section applies to multiple counts of conviction (1) contained in the same indictment or information, or (2) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding.

Usually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum, and be made to run concurrently with all or part of the longest sentence. If no count carries an ade-

quate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment.

Thus, on remand at sentencing, or if Carter is convicted on retrial of multiple counts, the trial court should once again follow the guidelines.

## C

■ Carter also asserts that the trial court erroneously determined that he was serving a special parole term for prior convictions when he committed the instant offenses, and therefore incorrectly increased his criminal history level by two points pursuant to U.S.S.G. § 4A1.1(d).[10] The presentence report states that defendant was on special parole for his May 1978 sentence at the time he committed the instant offense. At sentencing defendant disputed this determination, arguing that

> the special parole terms imposed by [the sentencing judge in the 1978 case] consisted of actually five special parole terms [of two years each] running concurrently on Count 1, Count 13, 14, 15 and 16 and a special parole term on Count 12 which ran consecutive to those. But the special parole term imposed on Count 1, a two-year special parole term, was vacated by Judge Daugherty as being an illegal sentence on August 5, 1980, by an Order filed in that case.

> We contend that the vacation of that special parole term on Count 1, in effect, vacated the special parole terms imposed in those counts which were ordered to run concurrently with it.

VII R. 4–5. We disagree. Vacation of the special parole term for count 1 did not vacate the other special parole terms on counts 12, 13, 14, 15, and 16. The district court determination that defendant was on special parole at the time he committed the instant offenses was correct.

## D

■ Carter argues that the district court erred in denying his motion to suppress evidence obtained during execution of the search warrant because the warrant was based on stale information. We test the denial of a motion to suppress evidence under a clearly erroneous standard. *United States v. Gay*, 774 F.2d 368, 375 (10th Cir.1985).

Carter argues that the warrants authorizing the search of his residence and business were based on a defective affidavit. He asserts the source of facts and identity of the person or persons with personal knowledge of the facts were not made known; he alleges the assertion by Jarvis and Connie Wells that they had observed a false wall in Carter's residence where he stored documents relating to illegal drug transactions did not include any reference as to when they observed it, and thus this and other information in the affidavit was stale.

The district court held a hearing on the motion to suppress, and found that the information in the warrant was timely "considering the nature and length of the criminal activity." *See* I R. tab 5 at 7 (No. 91–7062). The district court correctly listed factors determining whether information in an affidavit is too remote to establish probable cause, including "the nature of the criminal activity, the length of the activity, and the nature of the property seized." *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir.1986). The court also noted that when, as in the instant case, the affidavit contains information of an ongoing criminal activity, the passage of time is not as significant. The district court found under all the circumstances set forth in the affidavit, "including the veracity and basis of knowledge of persons supplying hearing information," that the magistrate had a substantial basis for determining there was probable cause to issue a warrant. I R. tab 5 at 7 (trial court order citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76

---

**10.** Section 4A1.1(d) provides: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."

L.Ed.2d 527 (1983)). After reviewing the affidavit and warrant, we hold the district court did not err in denying defendant Carter's motion to suppress.

## V

■ Defendant Pace makes a number of arguments that can be disposed of with only brief discussion. First, he asserts that count 1 of the indictment, alleging conspiracy to possess with intent to distribute methamphetamine/amphetamine and to attempt knowingly and intentionally to manufacture methamphetamine under 21 U.S.C. § 846 targeted the same offense as count 4 of the indictment, alleging violation of the Travel Act, 18 U.S.C. §§ 1952 and 2. Pace argues that because the two statutory charges are based on a single offense, the indictment was multiplicitous, and that he was prejudiced by this because he received more than one sentence for a single offense. *See United States v. Bolt,* 776 F.2d 1463, 1467 (10th Cir.1985).

"Whether a transaction results in the commission of one or more offenses is determined by whether separate and distinct acts made punishable by law have been committed." *United States v. Guzman,* 781 F.2d 428, 432 (5th Cir.), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986). Whether conduct supports two offenses or only one turns on whether " 'each count requires proof of a fact or element not required by the other.' " *United States v. Zwego,* 657 F.2d 248, 251 (1981) (quoting *Nolan v. United States,* 423 F.2d 1031, 1048 (10th Cir.1969)), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1275, 71 L.Ed.2d 460 (1982). A reading of the indictment and the two statutes at issue reveals that each count required proof of elements not required by the other: for example, the Travel Act violation required proof Pace traveled to Arkansas whereas the § 846 violation did not. The multiplicity argument is without merit.

■ Pace also asserts that the lower court erred in refusing to find a two level reduction in sentencing because he was a "minor participant" under U.S.S.G. § 3B1.2(b). The trial court's determination

that a defendant was a minor participant is a factual determination we must uphold unless it was clearly erroneous. *See United States v. Rutter,* 897 F.2d 1558, 1563 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). The record on appeal supports the sentencing court's finding that a downward departure was not warranted; the evidence recited in part I above reveals that Pace played a substantial role in the illegal activities.

■ Pace objected to the trial court's determination of the drug quantity involved. The court relied on expert testimony by a forensic chemist that the fifty pounds of precursor chemical (phenylacetic acid) could produce fourteen to twenty pounds of methamphetamine, and that the thirty-two pounds of precursor found during the search could produce eight to twelve pounds. Although Pace asserts that government informer Wells testified that the conspiracy was to cook three pounds, the district court was entitled to rely on the chemist's testimony in determining drug quantity. *See United States v. Andersen,* 940 F.2d 593, 597 (10th Cir. 1991).

■ Pace maintains he should have received a downward departure for lack of criminal history under 18 U.S.C. § 3553(b) and U.S.S.G. § 4A1.3. Such a departure is discretionary and the judge's exercise of discretion not to depart cannot be appealed. *See, e.g., United States v. Soto,* 918 F.2d 882, 883–84 (10th Cir.1990).

Pace argues that methamphetamine is not a properly classified Schedule II controlled substance. We have held to the contrary. *United States v. Youngblood,* 949 F.2d 1065, 1066 (10th Cir.1991).

■ Pace asserts the district court erred in admitting evidence concerning codefendant Leonard's distribution of methamphetamine on October 26, 1990; that it should have been excluded because the transaction occurred after the conspiracy ended. *See* Fed.R.Evid. 404(b). The indictment, however, charged Pace with a conspiracy to attempt to manufacture and distribute methamphetamine/amphetamine

that ended on or about October 26, 1990. The time of termination of a conspiracy is a factual inquiry, based on the general rule that "a conspiracy terminates when its central criminal purposes have been attained." *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir.1984). Even though Carter was arrested before October 26, when the other coconspirators remained free and carried on the objectives of the conspiracy, the conspiracy had not terminated.

 Rule 404(b) only applies to evidence of acts extrinsic to the charged crime. *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Evidence of Leonard's sale was direct evidence of the conspiracy, which the indictment charged as occurring between July 1 and October 26, 1990. Conduct during the life of a conspiracy that is evidence of the conspiracy is not Rule 404(b) evidence. *United States v. Merida*, 765 F.2d 1205, 1221 (5th Cir.1985). For the same reason we reject Pace's argument that the court erred in denying his proposed limiting instruction which would have required the jury to disregard Leonard's sale as evidence against Pace.

Finally, we hold the district court properly denied defendant Pace's motion for judgment of acquittal, based upon the insufficiency of the evidence. Pace argues that the testimony of government informant Jarvis Wells implicating Pace in the conspiracy was not credible. Pace points out inconsistencies between Wells' testimony and the testimony of Officer Gary Martin and Terry Riddle. A review of the record does indicate that the testimony of Martin and Riddle raised doubts concerning the credibility of Wells. *See* IV R. 29; V R. 229-30 (Martin testified that Wells was in his room for six and a half minutes; Wells testified he was in his room for "a couple of hours"); VI R. 491-92 (Riddle testified Wells introduced him to manufacturing illicit drugs). The question of credibility of witnesses, however, is one for the jury, and when viewed in total the evidence presented was sufficient to support a jury verdict of guilty.

## VI

In conclusion, defendant Leonard's conviction on count 3 is affirmed. All other convictions are affirmed provided the government consents to resentencing based upon the offense levels for amphetamine as opposed to methamphetamine, otherwise the district court is directed to vacate those convictions and order a new trial. On remand the district court should resentence Leonard on count 3 if its sentence on that count was affected by our remand with respect to the other counts.