USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1563 UNITED STATES OF AMERICA, Appellee, v. JAMES E. MELVIN, Defendant, Appellant. _____________________ No. 92-1564 UNITED STATES OF AMERICA, Appellee, v. MICHAEL C. HABICHT, Defendant, Appellant. _____________________ No. 92-1565 UNITED STATES OF AMERICA, Appellee, v. PATRICK J. NEE, Defendant, Appellant. _____________________ No. 92-1566 UNITED STATES OF AMERICA, Appellee, v. ROBERT EMMETT JOYCE, Defendant, Appellant. _____________________ No. 92-1724 UNITED STATES OF AMERICA, Appellee, v. MICHAEL O. MCNAUGHT, Defendant, Appellant. ____________________ OPINION AND ORDER ON THE APPELLANTS' MOTION FOR CLARIFICATION ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Martin G. Weinberg, Kimberly Homan, Judith Mizner, Kenneth J. ___________________ ______________ _____________ ___________ Fishman, and Anthony M. Cardinale on memoranda for appellants. _______ ____________________ Stephen P. Heymann, Assistant United States Attorney, Donald K. __________________ __________ Stern, United States Attorney, and James B. Farmer, Assistant United _____ ________________ States Attorney, on memorandum for appellee. _____________________ June 22, 1994 _____________________ COFFIN, Senior Circuit Judge. The six defendants in this _____________________ case were convicted on various charges arising from an attempted robbery of an armored truck. In an earlier opinion, we reversed their convictions based on the improper admission of evidence concerning prior firearms-related convictions. See United States ___ _____________ v. Melvin, et al., Nos. 92-1563-67, 92-1642-46, 92-1724-25, slip ______________ op. (1st Cir. April 22, 1994). Five of the defendants did not appeal their convictions on Count 14 of the indictment, however, which charged that defendants used and carried a firearm in connection with a crime of violence. See 18 U.S.C. 924(c).1 ___ Because our decision made no specific reference to Count 14, the defendants filed a Motion for Clarification asking that we amend our opinion to state explicitly that their convictions on that count remain intact. The government opposed the motion, arguing that the defendants were seeking inappropriately to foreclose a higher sentence on Count 14 upon retrial. We conclude that the defendants' motion should be granted, and therefore also address below the government's appeal of the sentence imposed on that charge. I. Motion for Clarification ________________________ We think it apparent that defendants decided not to appeal Count 14 because of an error at trial that may have worked to their benefit. All parties concede that the jury mistakenly was ____________________ 1 Although the defendants originally included Count 14 as part of their appeal, all but Murphy later filed a motion, which we granted, seeking to withdraw the appeals of their convictions on that count. -3- not asked to identify which of the six firearms at issue in this case -- ranging from machine guns to handguns -- underlay its guilty verdict on Count 14. The district court recognized the error at sentencing and, as a consequence, refused to impose the 30-year prison term mandated under 924(c) for use of machine guns, instead imposing only the five-year term set for less serious firearms.2 By removing Count 14 from their appeal, the defendants took a calculated risk. If they had challenged that charge successfully, a new trial would have been required and they might have been acquitted. On the other hand, they might have been convicted again, without error, based on a jury finding that they had used a machine gun or other serious weapon in attempting the robbery. A 30-year sentence necessarily would follow. Five of the six defendants evidently felt that, all things considered, the chance of acquittal was outweighed by the risk of the longer ____________________ 2 Section 924(c) provides, in relevant part: (c)(1) Whoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short- barreled shotgun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. . . . -4- sentence.3 The Motion for Clarification asks that we recognize, and permit, this choice. The government's response to the clarification motion is two-fold. First, it points out that if we grant defendants' motion and leave the Count 14 conviction undisturbed, we must address the government's sentencing challenge and should find that defendants are subject to the 30-year sentence. Second, the government vehemently asserts that we should deny the motion, arguing that the Count 14 conviction may not stand in the face of our decision that serious, reversible error occurred at trial.4 The government contends that such an inconsistency disserves the interests of justice, that the defendants should not be permitted to control sentencing options in such a manner, and that we have the authority to reverse the 924(c) convictions notwithstanding the defendants' decisions against appealing. After considering the various possible outcomes, and the policies at stake, we have concluded that it would be at least inappropriate, and probably a violation of double jeopardy principles, for us to vacate defendants' unappealed convictions on Count 14 and order that they be retried on that charge. The ____________________ 3 To make matters even more complicated, the defendants also needed to consider that the government had appealed the five-year sentence imposed on Count 14, arguing that the record required a finding that they had used automatic weapons and thus were subject to the 30-year term. 4 In a petition for rehearing on our original decision in this case, the government argued that we should not have reversed the convictions on all counts based on the improper admission of evidence concerning the defendants' prior firearms-related felony convictions. We have denied that petition in a separate order. -5- government cites no case in which a court has taken the extraordinary step of reaching beyond the charges before it on appeal toinvalidate a convictionthat neither partyhas challenged. The government relies instead on what we believe is wholly inapposite caselaw on sentencing. This precedent establishes that an appellate ruling invalidating a sentence, or reversing on some, but not all, counts of an indictment may implicate the trial judge's comprehensive, interdependent imposition of a penalty and thus require resentencing on all counts. See United ___ ______ States v. Pimienta-Redondo, 874 F.2d 9, 16 (1st Cir. 1989) (en ______ ________________ banc). The case before us presents a vastly different question. Rather than seeking re-evaluation of a defendant's punishment in __________ light of changed circumstances, the government asks that we put the issue of defendants' guilt on Count 14 to another jury. The _____ government presumably makes this request because it wants another chance to elicit a specific finding that defendants used or carried automatic weapons, which in turn would require a longer sentence. The government's unilateral pursuit of a retrial strikes us as directly at odds with the double jeopardy prohibition "against a second prosecution for the same offense after conviction," Jones v. Thomas, 491 U.S. 376, 381 (1989). _____ ______ Neither the inconsistency of excluding Count 14 from a retrial nor the defendants' "controlling" their sentence on that count by ensuring that it will be determined finally in the course of this appeal is particularly troubling. Our system of justice is not a precise and mechanical operation and, indeed, -6- that is one of its virtues. We permit inconsistent verdicts in certain circumstances, see, e.g., United States v. Powell, 469 ___ ____ _____________ ______ U.S. 57 (1984), and the fact that defendants may have fared better than perhaps they would have in an error-free trial does not seem reason enough to compel retrial against their will, compromising the principle of finality embodied in the double jeopardy clause. See Brown v. Ohio, 432 U.S. 161, 165 (1977); ___ _____ ____ United States v. Wilson, 420 U.S. 332, 343 (1975). _____________ ______ We therefore conclude that defendants' Motion for Clarification should be granted, and that Count 14 may not be retried.5 Consequently, we must consider the government's challenge to the sentence imposed on that charge. As we discuss below, our review of the record and caselaw persuades us that the district court acted properly and that the five-year terms must be affirmed. II. Factual Background __________________ We confine ourselves to a review of those facts particularly relevant to the sentencing issue. The six defendants were arrested near a Bank of New England branch in Abington, Massachusetts, shortly before the scheduled delivery of funds to the bank by an armored truck. Three defendants -- Joyce, ____________________ 5 We leave to the district court in the first instance consideration of the collateral estoppel consequences, if any, of appellants' convictions on Count 14. Compare United States v. _______ ______________ Pelullo, 14 F.3d 881, 890-96 (3d Cir. 1994) (collateral estoppel _______ may not be applied against defendant in criminal case) with ____ United States v. Colacurcio, 514 F.2d 1, 4-6 (9th Cir. 1975) ______________ __________ (collateral estoppel in criminal case not limited to such matters as defendant's status). -7- McNaught and Nee -- were arrested about a block from the bank in a van whose back seats had been removed. McNaught was in the front passenger seat. Nee was crouched, or kneeling, immediately behind the driver's seat. Joyce was similarly crouched, or kneeling, behind Nee. Melvin, who had been observed driving the van that morning, was arrested on foot a short distance away. The driver's seat was empty. Six guns, all loaded, were found in the van. On the floor between the driver's and passenger's seats was a .357 magnum pistol. An Uzi machine gun was on the floor behind the driver's seat, near Nee. To the rear of the Uzi, near Joyce, were two weapons: a semi-automatic rifle (with sawed-off stock and sawed- off barrel), and a second machine gun equipped with a silencer. Two other firearms were found in a nylon bag directly behind the driver's seat: a second .357 magnum pistol and a 9 mm. semi- automatic pistol. Defendants Habicht and Murphy were arrested a short distance away in another stolen car, whose back seat also had been removed. The car contained various items ostensibly for use in the robbery,6 but no firearms. Count 14 of the indictment charged the defendants with a violation of section 924(c) for the use and carrying of each of the six weapons and silencer found in the van. At trial, the defendants attempted to establish that they had no intention to ____________________ 6 The car contained, inter alia, materials presumably to be _____ ____ used in torching the vehicle following the robbery, a ski mask, a walkie-talkie and a radio scanner set to police frequencies. -8- commit an armed robbery, the "crime of violence" on which the 924(c) charge was based. Joyce and McNaught, the only defendants to testify, both claimed that the Abington theft was to have been an "inside" job requiring no weapons or force. Joyce asserted that the arsenal of weapons found in the van had been discovered only moments before the arrests when he opened a bag that he believed contained car theft tools and which had been given to him two days earlier by the government's cooperating witness, Ryan. Joyce and McNaught both testified that the defendants were shocked and angered at the unexpected presence of the weapons, and immediately called off the robbery. At the close of the evidence, the defendants requested that a "special verdict" be given for Count 14, requiring the jury to specify which weapon or weapons, if any, it found the defendants to have knowingly used or carried. The government objected, and the district court denied the motion. In its charge on Count 14, the court instructed the jury that it need find knowing use or possession of only one firearm to support a guilty verdict: I am now going to talk about . . . Count Fourteen. These are the firearms charges, that the defendant knowingly used or carried firearms. The indictment may say "and," and wherever the indictment says "and," it means "or, and/or." It is in the conjunctive. It can mean in the disjunctive. What that means is that the ____________________________ government must prove that each defendant used or _______________________________________________________ carried any one firearm . . . . _______________________ With respect to Count . . . Fourteen of the indictment, note that while the indictment is written in the conjunctive, in that it uses "and" as a connector, the government is required to proof [sic] only that the charged defendants knowingly used or carried a firearm. Similarly, the indictment charges in Count . . . Fourteen that the listed defendants used or carried a number of firearms during and in relation -9- to several specified crimes. The government must prove _________________________ that each defendant used or carried any one firearm, _______________________________________________________ but not necessarily all of them, during and in relation _______________________________ to any one, but not necessarily each, of those specified crimes. You must agree unanimously as to which firearm or firearms were used or carried during and in relation to which specified crime or crimes. Tr. 25:111 (emphasis added). The jurors thus were told that they must agree on the firearm or firearms used by each defendant, but were not asked to report these findings in their verdicts. At sentencing, the government sought the imposition of the mandatory thirty-year term prescribed by 924(c) when the firearm at issue is a machine gun or silencer. The trial court, however, concluded that it had erred in not asking the jury to find specifically which of the firearms the defendants had possessed, or whether one or more of the weapons in the van was, in fact, a machine gun. It therefore refused to impose more than the lowest possibly applicable sentence -- the five-year term prescribed for handguns.7 On appeal, the government claims that the court erred in so limiting the defendants' punishment. It contends that the law permits, and the facts require, imposition of 924's most severe sanction, the mandatory thirty-year term prescribed for the use or carrying of machine guns or a silencer. III. The Jury's Verdict __________________ ____________________ 7 Recognizing the possibility of an appeal on this issue, the court also set forth its own factual findings in the event a jury determination on the specific firearms used subsequently was ruled to be unnecessary. The court found, by a preponderance of the evidence, that all six defendants knowingly used and carried two machine guns, a silencer and a short-barreled rifle in connection with a crime of violence, in violation of 924(c). -10- The government acknowledges that a defendant found guilty of violating 924(c) may be sentenced to a thirty-year term only if the jury specifically identifies a machine gun or silencer as the firearm supporting the conviction. See United States v. ___ ______________ Martinez, 7 F.3d 146, 148 & n.1 (9th Cir. 1993); United States v. ________ _____________ Sims, 975 F.2d 1225, 1235 (6th Cir. 1992). It also is undisputed ____ that the jury in this case mistakenly was not asked to specify the weapon or weapons underlying its verdict. The government claims that the thirty-year term nevertheless applies because, in the unique factual circumstances of this case, a finding that defendants used machine guns is "implicit and inescapable" from the jury's general verdict. The government's thesis goes like this: because all of the weapons were found in the same place -- the van -- and because neither the prosecution nor defense offered the jury a theory for distinguishing among the firearms, there was no rational basis upon which the jury could conclude that any particular defendant used or carried some of the firearms but not others. The government emphasizes that the jury's guilty verdict on Count 14 demonstrates its rejection of the defense, sounded again and again throughout the trial and closing arguments, that the would- be robbers intended a wholly nonviolent takeover of the armored truck. Evidently having disbelieved Joyce and McNaught's testimony that Ryan was responsible for the weapons, the jury must have concluded instead that they were knowingly brought along by the defendants. The defendants made an all-or-nothing -11- argument about the firearms, the government points out, and so the jury must have reached an all-or-nothing verdict. This is certainly one plausible interpretation of the jury's decisionmaking. Our task in these circumstances, however, is not to determine whether the evidence and argument could support the _____ government's interpretation of the jury's verdict, but whether it inevitably must lead to such a construction. This standard was ____ well articulated by the Eleventh Circuit in United States v. ______________ Dennis, 786 F.2d 1029 (11th Cir. 1986), a drug conspiracy case in ______ which the indictment charged involvement with several different drugs, carrying different penalties, and the jury returned a general verdict that did not specify the drug supporting its decision: [T]he reviewing court in such a situation may not examine the evidence presented at trial to determine whether the jury, if properly instructed could have or _____ even should have found a heroin/cocaine conspiracy and ______ returned a verdict indicating as much; rather, the court's inquiry is confined to determining beyond any reasonable doubt whether the jury did find such a ___ conspiracy and whether it intended the verdict it returned to reflect that determination. Only in that manner may we avoid invading the special province of the jury in a criminal case both to find the facts and apply the law as it sees fit. Id. at 1041 (emphasis in original). See also United States v. __ ___ ____ _____________ Pace, 981 F.2d 1123, 1129-30 (10th Cir. 1992); United States v. ____ ______________ Quicksey, 525 F.2d 337, 340-41 (4th Cir. 1975). ________ We have concluded that we may not exclude beyond a reasonable doubt the possibility that the jury rendered a guilty verdict on Count 14 based on a determination that the defendants possessed only a handgun -- the weapon found in the front of the -12- van. Although it is true, as the government argues, that both prosecution and defense repeatedly dealt with the six weapons as an undifferentiated collection, the evidence and jury charge provided an obvious opportunity for the jury to distinguish among them. The evidence permitted the jury to find that the handgun found on the floor between the two front seats had been placed there deliberately and carefully. It was, at least to some extent, separated from the five weapons found in the back of the van, all of which were inside, or very close to, the bag that the defendants claimed Ryan had provided. Certainly, the jury reasonably could have focused on the handgun and concluded that, whatever the defendants' relationship to the automatic weapons, that one firearm had been brought along purposefully. Indeed, the court's instruction explicitly permitted the jury to avoid deciding the source of the weapons found in the rear of the van, by emphasizing that Count 14 required a finding of only a single firearm. See supra at 8. Thus, the jurors ___ _____ might have suspended their deliberations on the use of firearms once they concluded that these experienced criminals must have carried at least a single gun -- the handgun in the front seat -- for use as a show of force or to discourage heroic efforts against them. The fact that neither the government nor defense urged such an approach to the evidence does not preclude the possibility that the jury reached its result in that way. In our view, -13- focusing on the handgun was a fairly obvious choice for the jurors, particularly if there were any disagreement among them about Ryan's role in providing the weapons.8 We therefore conclude that the jury's verdict fails to establish, beyond a reasonable doubt, that the jurors found that the defendants violated 924(c) through use of weapons subject to a term of imprisonment greater than five years. Consequently, we affirm the district court's 60-month sentence on Count 14.9 IV. Some further comment is necessary. The problem in this case resulted, at least in part, from the government's understanding of our precedent on special verdicts in criminal cases. United ______ States v. Spock, 416 F.2d 165 (1st Cir. 1969), remains a leading ______ _____ authority against the use of special verdicts based on their ____________________ 8 In all likelihood, the defendants deliberately avoided distinguishing among the weapons in the hope that the jury would be persuaded that no weapons at all were intended to be used. In other words, it was not in their interest to highlight the front- seat weapon. This strategic decision does not, however, foreclose them from arguing, nor us from concluding, that the jurors reasonably could have drawn such a distinction themselves based on the evidence and instructions. 9 The defendants argued that, even if we found that the jury's verdict unambiguously reflected a finding that all of the weapons found in the van were used by all of the defendants, the 30-year sentence could not be imposed because the jury had not been asked to decide whether those firearms were, in fact, automatic weapons and whether the defendants knew the nature of the weapons. The government contended that it was the court's role to determine the appropriate label for the firearms, and that it was unnecessary to prove knowing use of automatic weapons. Our conclusion that the jury's verdict was ambiguous makes it unnecessary to consider these other questions. -14- potential for leading the jury to the prosecution's desired conclusion. Id. at 180-83. ___ Even in Spock, however, we recognized that there may be _____ circumstances in which eliciting particularized information from the jury will be permissible. See 416 F.2d at 182-83 & n.41. ___ See also Heald v. Mullaney, 505 F.2d 1241, 1245-46 (1st Cir. ___ ____ _____ ________ 1974) (some usages of special interrogatories may be exempt from the dangers described in Spock). We believe this is such a _____ context. Where, as here, a statute proscribes more than one type of conduct, with penalties that vary depending upon the acts committed, some method of ascertaining the jury's specific finding is necessary. At least two circuits have held expressly that the ambiguous verdict problem in a 924(c) case may be handled either through use of special interrogatories or by submitting separate counts to the jury for each firearm allegedly used and, should there be more than one conviction, merging those convictions after the trial. See Martinez, 7 F.3d at 148 n.1; Sims, 975 F.2d at 1235. ___ ________ ____ In either approach, if the jurors find that the defendant used or carried firearms falling within several categories of weapons, the sentence imposed will be for the most dangerous weapon; i.e., ____ the defendant will receive the highest of the varying applicable terms. See Martinez, 7 F.3d at 148-49; Sims, 975 F.2d at 1236. ___ ________ ____ We agree that either of these two procedures would be acceptable, and we are joined in this conclusion by the government. Although contending that the result in this case is -15- self-evident, the government acknowledges that determining a jury's precise verdict in a 924(c) case involving multiple firearms usually will require resort to one or the other of these techniques. It bears repeating that allowing these techniques, in this context, is not inconsistent with Spock; these are _____ precisely the circumstances in which we recognized that an exception to the rule against special interrogatories might be necessary. See 416 F.2d at 182 & n.41. Accord United States v. ___ ______ _____________ North, 910 F.2d 843, 910-11 (D.C. Cir. 1990) (recognizing that _____ special verdicts may be employed in certain contexts, including "as a means of more precisely determining an appropriate and fair punishment").10 See also United States v. Bounds, 985 F.2d ___ ____ _____________ ______ 188, 194-95 (5th Cir. 1993) (multiple drug conspiracy case); United States v. Owens, 904 F.2d 411, 414-15 (8th Cir. 1990) ______________ _____ (same); Newman v. United States, 817 F.2d 635, 637 & n.3 (10th ______ _____________ Cir. 1987) (same); Dennis, 786 F.2d at 1041 (same); United States ______ _____________ v. Orozco-Prada, 732 F.2d 1076, 1083-84 (2d Cir. 1984) (same). ____________ The Motion for Clarification is granted, and our original ____________________________________________________________ decision is modified to exclude remand for retrial of Count 14 _________________________________________________________________ for defendants Melvin, Joyce, Habicht, Nee and McNaught. We _________________________________________________________________ affirm the five-year sentence imposed on that charge. ____________________________________________________ ____________________ 10 Although the court in North noted that special _____ interrogatories for sentencing reasons have been deemed appropriate when the defendant has requested or accepted them, a _________ ________ court presumably must have the discretion to adopt the procedure even if the defendant has not explicitly approved in order to avoid ambiguous verdicts such as the one at issue here. -16-