**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George W. KIRBY, Jr.,
Defendant–Appellant.**

**No. 90–3058.**

United States Court of Appeals,
Tenth Circuit.

Nov. 28, 1990.

Richard Hathaway, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., and Kurt J. Shernuk, Asst. U.S. Atty., with him on the brief), Topeka, Kan., for plaintiff-appellee.

Marilyn M. Trubey, Asst. Federal Public Defender (Charles D. Anderson, Federal Public Defender, with her on the brief), Topeka, Kan., for defendant-appellant.

Before LOGAN, ANDERSON, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

By indictment George W. Kirby, Jr. was charged in the United States District Court for the District of Kansas with various drug charges permitting, if convicted, a possible life sentence. His trial was set for September 11, 1989. Kirby, who was at the time released on bond, did not appear in court on September 11, 1989, and bond was forfeited.[1] A bench warrant for his arrest issued.

By a one-count indictment returned on October 4, 1989, Kirby was charged with the offense of failing to appear for trial involving an offense punishable by life imprisonment before the United States District Court for the District of Kansas as required by his conditions of release, in violation of 18 U.S.C. § 3146(a)(1). On No-

---

1. Kirby was tried, *in absentia,* along with a co-defendant, who was present, on these various drug charges, and was convicted by a jury on September 19, 1989. Kirby was sentenced on January 26, 1990, to an aggregate imprisonment term of 180 months, to be followed by 8 years of supervised release. His appeal of that conviction and sentence is by a separate appeal in this court, No. 90–3038, United States v. Kirby. That appeal was argued before a different panel of this court on September 25, 1990, and is awaiting decision.

vember 24, 1989, Kirby surrendered to the United States Marshals Service.

On January 4, 1990, Kirby pleaded guilty to the aforesaid one-count indictment charging him with failure to appear, and on February 16, 1990, he was sentenced to twelve months imprisonment to be served consecutive to the sentence of 180 months he had received in the underlying drug charge on January 26, 1990.

In the instant appeal, Kirby challenges the twelve-month sentence he received on the failure to appear charge, arguing that the sentencing guidelines were improperly applied.

Sentencing Guideline § 2J1.6(a), entitled *Failure to Appear by Defendant*, sets Kirby's base offense level at 6. Section 2J1.6(b) provides that if the underlying offense is punishable by death or imprisonment for a term of fifteen years or more, which in Kirby's case it was, the base offense level should be increased by 9 levels. Accordingly, at this point Kirby had a base offense level of 15. The pre-sentence report recommended a two-level downward departure based on Kirby's "acceptance of responsibility," and, in line therewith, the pre-sentence report set Kirby's base offense level at 13. All concerned agree that the base offense level for Kirby is 13. The dispute arises in connection with the computation of Kirby's criminal history category.

In computing Kirby's criminal history category, Kirby received 1 point based on his conviction in 1981 on charges where he received two concurrent six-month sentences with all but thirty days suspended. Sentencing Guidelines §§ 4A1.1(c), 4A1.2(a)(2), (b)(2) and (e)(2). Kirby does not challenge that. Before sentencing, and again at sentencing, Kirby did challenge that part of the pre-sentence report which assessed him 3 additional points for a conviction he suffered in 1971. In this regard, the presentence report shows that on October 22, 1970, Kirby, then 23 years of age, was charged with the possession of an unregistered shotgun, and, after pleading guilty, was sentenced on October 13, 1971, to ten years imprisonment, which was later reduced to five years imprisonment. Kirby was thereafter paroled on February 26, 1974, and received an early termination of parole on May 28, 1976.

Kirby's basic argument is that the sentence imposed in 1971 on the unregistered shotgun possession is beyond the fifteen-year limitation provided for in § 4A1.2(e) and that he should not have been assessed 3 points for that conviction in the computation of his criminal history category.[2] Section 4A1.2(e) reads as follows:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's *commencement of the instant offense* is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period (emphasis added).

As indicated, at sentencing Kirby's counsel argued that in computing Kirby's criminal history category his 1971 conviction for possession of an unregistered shotgun should not have been counted, since it occurred more than fifteen years prior to the date of the instant offense, i.e., the date he failed to appear for his trial on the underlying drug charges. Such, counsel pointed out, made a difference in the sentencing range permitted by the guidelines. With a base offense level of 13, which is not in dispute, and a criminal history category of III, which is in dispute, the guideline range is 18 to 24 months. However, with a base offense level of 13, and a criminal history category of only I, the guideline range is 12 to 18 months.

The district court overruled Kirby's objection and accepted the pre-sentence report's recommendation that Kirby had a base offense level of 13 and a criminal history category of III, and that the guideline range was 18 to 24 months imprisonment. Defense counsel then asked the dis-

---

**2.** 4 criminal history points places an individual in a criminal history category of III. 1 criminal history point places an individual in a criminal history category of I.

trict court to make a downward departure under §§ 5G1.2 and .3, as well as the mitigating circumstances surrounding Kirby's failure to appear for trial[3]. The district court agreed with counsel and, it would appear, made a downward departure under §§ 5G1.2 and .3, imposing a sentence of 12 months imprisonment. In so doing, the district judge said that he was sentencing Kirby "as if he had a criminal history category of I and the offense level of 13."

It is agreed that Kirby ceased being incarcerated on his 1971 conviction for possession of an unregistered shotgun on February 26, 1974, and that the fifteen-year period provided for in § 4A1.2(e) commenced to run on that date. *United States v. Stephenson*, 887 F.2d 57, 61 (5th Cir. 1989).[4] Fifteen years after February 26, 1974, is February 26, 1989. Kirby failed to appear for his trial on the drug charges on September 11, 1989, which date is beyond the fifteen-year limitation period provided for in § 4A1.2(e).

The dates the underlying drug offenses were committed were between May 1, 1988 and March 21, 1989, the commencement of which was within fifteen years from the date of Kirby's release on the 1971 conviction, which was February 26, 1974. The pre-sentence report calculated Kirby's criminal history category on the basis that the date when Kirby failed to appear for his drug trial was not material, and that in fixing the fifteen-year limitation period, the crucial date was the date the underlying offense (the drug charge) commenced, i.e., May 1, 1988. As indicated, in this regard, the district court denied counsel's objection to the presentence report and held that the 1971 conviction for possession of an unregistered shotgun should be counted in calculating Kirby's criminal history category. On appeal, the government's initial position

is that the district court was correct in counting the 1971 conviction.

Section 4A1.2(e) provides that a sentence exceeding one year and one month which has been imposed within fifteen years of a defendant's "commencement of the instant offense" is to be counted in fixing a defendant's criminal history category. As indicated, that part of the provision has no application in the present case. However, the guideline goes on to provide that a prior sentence exceeding one year and one month, "whenever imposed," is to also be counted if it resulted in a defendant being incarcerated "during any part of such fifteen-year period."

■ We are here concerned with the meaning of the phrase "commencement of the instant offense." As applied to the present case, Kirby argues that it means the date he committed the offense for which he was about to be sentenced, i.e., September 11, 1989, the day when he failed to appear in court for his trial on the drug charges, which date would be outside the fifteen-year period.

The government's position is that the September 11th date is irrelevant, and that the crucial date is May 1, 1988, the date when the underlying drug offense commenced, which date is within fifteen years from the date of Kirby's release from incarceration for the 1971 conviction.

"[I]nstant offense," given its plain meaning, must mean the offense for which Kirby was about to be sentenced. And the "instant offense," i.e., failing to appear, had not "commenced" when the underlying drug offenses were commenced in 1988. The fact that the "underlying offense" was punishable by death or imprisonment for fifteen years or more and that such, under the guidelines, required an increase of 9 levels in the base offense level does not

---

3. Kirby's father had recently died, and there had been threats made against Kirby's children.

4. Kirby's sentence on the unregistered shotgun possession was imposed on October 13, 1971, which date was clearly beyond any fifteen-year period, be it from the date of the "instant offense," i.e., the failure to appear charge, September 11, 1989, or the date of the "underlying offense," i.e., the drug offenses, which commenced May 1, 1988. Hence, we are here concerned with the second sentence in § 4A1.2(e), which provides that a prior sentence, regardless of when imposed, shall be counted if it resulted in incarceration "during any part of such fifteen-year period."

mean that the "underlying offense" should also be factored into the determination of Kirby's criminal history category. Section 2J1.6(b) requires use of the underlying offense in determining Kirby's base offense level, but there is no comparable guideline permitting the underlying offense to also be used in determining Kirby's criminal history category.

In sum, "instant offense" and "underlying offense" are not synonymous, and "instant offense" means the offense for which Kirby was about to be sentenced, i.e., the failure to appear indictment. Given this meaning, Kirby's conviction and sentence in 1971 for unlawful possession of a shotgun was beyond the fifteen-year period, since he was released from incarceration for that conviction on February 26, 1974, and September 11, 1989, is more than fifteen years beyond February 26, 1974.

 The government argues, alternatively, that even assuming the district court erred in factoring Kirby's 1971 conviction into the computation of his criminal history category, such error was harmless. In this regard, the government reasons that in imposing sentence the district court made a downward departure to the end that Kirby was treated "as if" he had a base offense level of 13, and a criminal history category of I. So, says the government, where has Kirby been harmed? We do not agree.

As indicated, the guideline range for a person with a base offense level of 13 and a criminal history category of III is 18 to 24 months, and the guideline range for a person with a base offense level of 13 and a criminal history category of I is 12 to 18 months. The district court departed downward from the guideline range of 18 to 24 months and sentenced Kirby to 12 months imprisonment. What we do not know is whether the district court would have also made a downward departure from the guideline range of 12 to 18 months if it had initially assigned Kirby a base offense level of 13 and a criminal history category of I, to the end that Kirby would have been sentenced to something *less* than 12 months. That possibility exists. On appeal, we cannot assume that the district court would not have made such a downward departure.

Sentence vacated and case remanded for resentencing.