**UNITED STATES of America, Plaintiff–Appellee,**

v.

**FLOYD CORNELIUS BUSH, III, Defendant–Appellant.**

No. 94–6381.

United States Court of Appeals, Tenth Circuit.

Nov. 15, 1995.

558

Submitted on the briefs.*

Rozia McKinney–Foster, United States Attorney, and Leslie M. Maye, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff–Appellee.

Michael G. Katz, Federal Public Defender, and Jenine Jensen, Assistant Federal Public Defender, Denver, Colorado, for Defendant–Appellant.

Before BRORBY, BARRETT and LOGAN, Circuit Judges.

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

BRORBY, Circuit Judge.

Floyd Cornelius Bush, III pled guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a) and 21 U.S.C. § 846. He now contends the district judge committed plain error by attributing 7.5 kilograms of cocaine base to him for sentencing purposes because it is unclear from the record whether the object of the conspiracy to which he pled guilty was to distribute cocaine base, cocaine powder, or both. According to Mr. Bush, our recent decision in *United States v. Pace*, 981 F.2d 1123 (10th Cir.1992), *cert. denied*, 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993), requires that we either remand his case to the district court for resentencing using the base offense level for 7.5 kilograms of cocaine powder or, if the government does not consent to resentencing, that we allow him to withdraw his guilty plea and proceed to trial. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and affirm.

The government filed a criminal complaint charging Mr. Bush and four others with one count of conspiracy "to possess with intent to distribute and to distribute cocaine base." Mr. Bush then signed a plea agreement stating, among other things, he would plead guilty to the charge alleged in the complaint and assist the government in prosecuting the remaining defendants. The plea agreement also contained a provision stating Mr. Bush acknowledged "[a]t the signing of this Plea Agreement, the Government was aware of approximately 5–15 kilograms of *cocaine base*, as to" him. (Emphasis added.)

A grand jury then returned a twenty-nine-count indictment charging Mr. Bush and eleven other individuals with various crimes committed during the course of a six-year conspiracy to distribute cocaine in the Musgrave Addition area of Oklahoma City. Count 1 of the indictment alleged Mr. Bush and others had conspired to distribute "cocaine (powder) and/or cocaine base (crack)." The indictment specifically alleged Mr. Bush (1) "distributed cocaine and/or cocaine base,"

(2) "used binoculars and/or walkie-talkies to conduct counter-surveillance for law enforcement and to assist during cocaine base (crack) transactions," (3) "possessed firearms and/or guns to protect the cocaine (powder) and/or cocaine base (crack) during transportation [of] the drugs while they were in their possession before distribution, during distributions of cocaine (powder) and/or cocaine base (crack)," and (4) "assist[ed] in the counting of monies during cocaine (powder) and/or cocaine base (crack) transactions."

Mr. Bush filed a petition to enter a plea of guilty to count 1 of the indictment, in which he admitted he "was involved with others in the distribution of cocaine." [1] At the change of plea hearing, the government reiterated "at the time of the signing of the plea agreement, the government was aware [of] between five and 15 kilograms of *cocaine base* that would be attributable to" Mr. Bush, and both Mr. Bush and his counsel agreed this "state[d] [their] full understanding of [the] agreement." (Emphasis added.) In addition, Mr. Bush responded "Yes" in open court to the following questions regarding the factual basis of his plea: "Mr. Bush, from on or about the middle part of 1988 until sometime in 1993, did you agree with Timothy Johnson, Kevin Johnson, Charles Watson and others to distribute *crack cocaine* here in Oklahoma City?"; "As part of your agreement, did you assist Timothy Johnson and others by doing counter-surveillance of the area to where the *crack* was being sold?"; "Did you do it knowing that there was a *cocaine base* selling operation going on and that you were assisting that operation by doing the surveillance?" (Emphasis added.) The district court also warned Mr. Bush although the government had agreed *"only* five to 15 kilograms of *cocaine base"* were attributable to him, "that's not binding on the probation office or on me for the final determination of sentence." (Emphasis added.) The district court accepted Mr. Bush's guilty plea and later entered a judgment against him for one count of "Conspiracy to distrib-

---

1. Although Mr. Bush's plea agreement states he would plead guilty to the conspiracy charge alleged in the criminal complaint, it became clear during his change of plea hearing the indictment had superceded the complaint and Mr. Bush intended to plead guilty to the conspiracy charge alleged in count 1.

ute cocaine (powder) and/or cocaine base (crack)."

Mr. Bush testified at the consolidated trial of five of his alleged coconspirators. He spoke in detail about his and the five defendants' six-year effort to distribute cocaine base in the Musgrave Addition area of Oklahoma City. He testified that in 1988 he began selling approximately one gram of *crack cocaine* three times per week for Morris Johnson, one of the other individuals charged in the indictment. By the summer of 1988, Mr. Bush had begun selling two grams three times per week. Mr. Bush stopped selling *crack cocaine* around Thanksgiving of 1988, but resumed selling two grams three times per week for about three months during the summer of 1989. Mr. Bush began selling the same amount of *crack cocaine* between the beginning of 1990 and the beginning of 1992. Mr. Bush obtained a new supplier in the beginning of 1992, Morris Johnson's brother Timothy Johnson, another individual charged in the indictment. Mr. Bush sold about two grams of *crack cocaine* four times per week for Timothy Johnson until Thanksgiving of 1992. He started selling *crack cocaine* again in the beginning of 1993, but stopped later that year.

Mr. Bush also bought a .45 caliber Ruger and a nine-millimeter Glock with money Timothy Johnson had given him. Timothy Johnson wanted the weapons for protection "[f]rom people trying to rob him and drive-bys," but he could not buy them himself because he was on probation. Charles Watson and Ronnie Johnson were later arrested in Arizona with the .45 caliber Ruger and one-half kilogram of cocaine they were transporting from Los Angeles to Oklahoma City for Timothy Johnson. Mr. Bush also admitted he was present every day from noon to midnight at a house from which Timothy Johnson sold *crack cocaine*, and he "assisted in these transactions." This assistance included taking turns serving the people who drove up in cars looking to buy *crack cocaine*. Many of the transactions Mr. Bush "assisted on" involved one-half ounce or more of *crack cocaine*. Mr. Bush also admitted he helped count the money Timothy Johnson got from selling *crack cocaine*.

The jury convicted each of the five individuals against whom Mr. Bush testified. Prior to Mr. Bush's sentencing hearing on October 4, 1994, the government filed an in camera motion for a downward departure. U.S.S.G. § 5K1.1. Mr. Bush's presentence report attributed 7.5 kilograms of crack cocaine to him, yielding a base offense level of 40. U.S.S.G. § 2D1.1. The presentence report also recommended a two-point increase for possession of a dangerous weapon, U.S.S.G. § 2D1.1(b), and a three-point decrease for acceptance of responsibility, U.S.S.G. §§ 3E1.1(a) and 3E1.1(b), for a total offense level of 39 and a sentencing range of 292 to 365 months in criminal history category II.[2] Neither Mr. Bush nor his counsel objected to any part of the presentence report. The district court granted the government's motion for a downward departure and sentenced Mr. Bush to 10 years imprisonment.

I

Mr. Bush contends because "[n]either the petition to enter a guilty plea, nor the plea agreement, nor the factual basis presented at the guilty plea hearing adequately specify" whether the object of the conspiracy was to distribute cocaine base, cocaine powder, or both, the district court erred by calculating his base offense level on the assumption the object of the conspiracy was to distribute cocaine base.[3] He relies

---

2. The district court used the version of the Sentencing Guidelines in effect at the time of Mr. Bush's sentencing hearing. U.S.S.G. § 1B1.11(a). The Sentencing Guidelines were amended on November 1, 1994. Under the amended version, Mr. Bush's base offense level would have been 38 and his total offense level would have been 37, yielding a sentencing range of 235 to 293 months.

3. The base offense level for 7.5 kilograms of cocaine powder is 32. U.S.S.G. § 2D1.1. After factoring in the other adjustments, Mr. Bush's total offense level would be 31, yielding a sentencing range of 121 to 151 months. Although Mr. Bush's actual sentence was only 120 months because of the downward departure, the asserted error in calculating his base offense level was not harmless, because it may have affected the extent to which the district court departed downward. *United States v. Kirby*, 921 F.2d 254, 257 (10th

primarily on our recent decision in *United States v. Pace*, 981 F.2d 1123 (10th Cir.1992), *cert. denied*, 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). In *Pace*, we joined several other circuits in holding if a jury returns a general verdict which does not specify the object of a conspiracy, the defendant must be sentenced on the basis of the objective yielding the lowest offense level, and it is plain error for the district court to sentence the defendant on the basis of any other objective. *Id.* at 1128–30. Mr. Bush contends there is no principled distinction between a jury verdict which does not specify the object of a conspiracy and a guilty plea which does not specify the object of a conspiracy, and our analysis in *Pace* applies equally to both situations. We agree. Applying *Pace* to this context, we conclude if it is impossible to determine with a reasonable degree of certainty, either based on the indictment, the plea agreement, the petition for entry of a guilty plea, the colloquy at the change of plea hearing, the sentencing hearing, or some other part of the record, whether he intended to plead guilty to conspiring to distribute cocaine base, cocaine powder, or both, we must order the sentence to be vacated and direct the district court to resentence the defendant on the basis of the objective yielding the lowest offense level, or, if the government does not consent to resentencing, we must allow the defendant to withdraw his guilty plea and proceed to trial.

The United States Sentencing Guidelines, however, support a different result. U.S.S.G. § 1B1.2(d) provides: "A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." Application note 5 states:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the con-

spiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

Read together, these provisions mean if a guilty plea or verdict is ambiguous regarding the object of a conspiracy, the appropriate remedy is to remand the case to the district court with directions to hold a hearing and make a finding as to the object of the conspiracy. If the district court made such a finding, our task would simply be to review that finding for clear error.

 The Ninth Circuit recently rejected the approach set forth in U.S.S.G. § 1B1.2(d), comment. (n. 5), and reaffirmed the analysis we used in *Pace*. *United States v. Garcia*, 37 F.3d 1359, 1369–71 (9th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1699, 131 L.Ed.2d 562 (1995). Although *Garcia* was a pre-guidelines case, the court stated in dictum it would have been unconstitutional to give Mr. Garcia the remedy authorized under U.S.S.G. § 1B1.2(d), comment. (n. 5). *Garcia*, 37 F.3d at 1371, n. 4. It would have been unconstitutional because "An element of the crime of conspiracy under [21 U.S.C.] § 846 is that the conspiracy must be to commit an offense under the Drug Abuse Prevention and Control subchapter," which includes 21 U.S.C. §§ 841(a) and 843(b). *Garcia*, 37 F.3d at 1370; *see also United States v. Sullivan*, 919 F.2d 1403, 1435 (10th Cir.1990). Because the object of a conspiracy is an element of the offense, the Fifth and Sixth Amendments require a jury to determine all facts necessary to establish the existence of the object of the conspiracy, and the government must prove it beyond a reasonable doubt. *Garcia*, 37 F.3d at 1370; *United States v. Gaudin*, —— U.S. ——, ——, 115 S.Ct. 2310, 2313–2314, 132 L.Ed.2d 444 (1995); *Sullivan v. Louisiana*, 508 U.S. 275, ——, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). Thus,

Cir.1990). Nor is it significant whether any of the mandatory minimum sentences prescribed in 21 U.S.C. § 841(b) apply, because the district court may depart below such mandatory minimum sentences where, as here, the government has moved for a downward departure pursuant

to U.S.S.G § 5K1.1. 18 U.S.C. § 3553(e); *United States v. Campbell*, 995 F.2d 173, 174–175, n. 5 (10th Cir.1993); *United States v. Kuntz*, 908 F.2d 655, 657 (10th Cir.1990); *see also United States v. Keene*, 933 F.2d 711, 713–714 (9th Cir. 1991).

the procedure authorized in U.S.S.G. § 1B1.2(d), comment. (n. 5) would have violated the Fifth and Sixth Amendments by taking this issue away from the jury and placing it in the hands of the judge.[4] We agree with the Ninth Circuit's analysis in *Garcia* and reaffirm the remedy we announced in *Pace.*

## II

Applying the *Pace* analysis to this case, we must decide whether it is possible to determine with a reasonable degree of certainty whether Mr. Bush intended to plead guilty to conspiracy to distribute cocaine base, conspiracy to distribute cocaine powder, or both. If we cannot determine the object of Mr. Bush's conspiracy, we must order his sentence to be vacated and direct the district court to resentence him using the lower base offense level for cocaine powder, or, if the government does not consent to resentencing, we must allow him to withdraw his plea and proceed to trial. If we were to let stand the higher sentence calculated using the base offense level for crack cocaine, we would in effect be affirming a sentence based on a criminal objective to which Mr. Bush may or may not have intended to plead guilty and of which a jury has not found him guilty him beyond a reasonable doubt.

■ The government's decision to use the conjunction "and/or" in the indictment adds a great deal of uncertainty to this case. Such vague language is strongly disfavored. Starting with then Circuit Judge Burger's opinion in *Brown v. United States,* 299 F.2d 438, 440 & n. 3 (D.C.Cir.), *cert. denied,* 370

U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962), courts have repeatedly stated when the government uses such ambiguous language in the indictment, the only way to prevent confusion at sentencing and on appeal is to instruct the jury to render a special verdict which reveals on its face which of the criminal objectives it found the government proved at trial. *See Garcia,* 37 F.3d at 1369–70; *United States v. Owens,* 904 F.2d 411, 414 (8th Cir.1990); *Newman v. United States,* 817 F.2d 635, 637 (10th Cir.1987); *United States v. Dennis,* 786 F.2d 1029, 1038 (11th Cir.1986); *United States v. Orozco-Prada,* 732 F.2d 1076, 1084 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 155, 83 L.Ed.2d 92 (1984); *United States v. Quicksey,* 525 F.2d 337, 341 (4th Cir.1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). The *Brown* and *Garcia* courts went so far as to place the burden of requesting a special verdict on the government under such circumstances. Such ambiguous language also complicates matters if the defendant chooses to plead guilty, because the ambiguity must be corrected. However, these procedural complications and the possibility of an ambiguous conviction can be avoided if the language of the indictment is clear.

■ Nevertheless, despite the ambiguity in the indictment in this case, our review of the record as a whole leaves us sufficiently certain Mr. Bush intended to plead guilty to conspiracy to distribute cocaine base, not conspiracy to distribute cocaine powder. In his plea agreement, Mr. Bush conceded "[a]t

---

4. The Sentencing Commission appears to have been aware U.S.S.G. § 1B1.2(d), comment. (n. 5) was open to constitutional attack. When the Commission adopted application note 5, it stated the district court should make its determination using the beyond-a-reasonable-doubt standard because "[a] higher standard of proof should govern the creation of what is, in effect, a new count of conviction." U.S.S.G. App. C, amend. 75. However, although the Sentencing Commission selected the constitutionally appropriate standard of proof, it assigned the issue to the wrong trier of fact.

The Fifth Circuit has struck a compromise between *Pace* and U.S.S.G. § 1B1.2(d), comment. (n. 5). In that Circuit, a sentencing judge faced with an ambiguous verdict, and ostensibly an ambiguous guilty plea, may use the procedure

authorized in the Sentencing Guidelines provided the final sentence does not exceed the maximum penalty allowed under the statute providing the least severe punishment. *United States v. Fisher,* 22 F.3d 574, 576–577 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 529, 130 L.Ed.2d 433 (1994); *United States v. Cooper,* 966 F.2d 936, 940–942 (5th Cir.), *cert. denied,* 506 U.S. 980, 113 S.Ct. 481, 121 L.Ed.2d 386 (1992). This analysis does not apply here. Disregarding as we must the district court's decision to depart downward, *United States v. Kirby,* 921 F.2d 254, 257 (10th Cir.1990), the sentencing range the district court reached by attributing 7.5 kilograms of cocaine base to Mr. Bush greatly exceeds the sentencing range it would have reached had it attributed 7.5 kilograms of cocaine powder to him. *See* n. 3, *ante.*

the signing of this Plea Agreement, the Government was aware of approximately 5–15 kilograms of *cocaine base,* as to" him. (Emphasis added.) Mr. Bush and his counsel acknowledged the government's assertion a second time during the change of plea hearing. This alone removes any serious doubt as to the object of the conspiracy. Our conclusion is further supported by Mr. Bush's repeated admissions during both the trial and the change of plea hearing that he had participated in a conspiracy to distribute crack cocaine and he had personally distributed crack cocaine for Morris and Timothy Johnson over the course of several years.

**AFFIRMED.**