REVISED, July 14, 1999

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10128

_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    v.

CARL JAY WASKOM, JR.,

                              Defendant-Appellant,

* * * * * * * * * * *

_____

No. 98-10166

_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    v.

EDWARD TAYLOR, JR.,

                              Defendant-Appellant.

* * * * * * * * * * *

_____

No. 98-10167

_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    v.

SHAWN DEE ADAMS,

                              Defendant-Appellant.

* * * * * * * * * * *

UNITED STATES OF AMERICA,

                          Plaintiff-Appellee,
                    v.
CATHERINE DEE ADAMS,

                          Defendant-Appellant.

_____

Appeals from the United States District Court
     for the Northern District of Texas
_____

June 22, 1999

Before KING, Chief Judge, POLITZ and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Carl J. Waskom, Jr., Edward Taylor, Jr., Shawn Dee Adams, and Catherine Dee Adams appeal the sentences imposed on them by the district court. With respect to the sentences imposed on Waskom and the Adamses, we vacate and remand for resentencing. Because the sentencing judge should have granted Taylor's motion for recusal, we vacate his sentence and remand for new sentencing proceedings before a different judge.

I

Pursuant to a written plea agreement, Waskom, Taylor, Shawn Adams, and Catherine Adams (collectively "the defendants") pleaded guilty to conspiracy to obstruct and delay interstate commerce by robbery and physical violence, in violation of 18 U.S.C. § 1951.

2

Taylor and the Adamses also pleaded guilty to possession of an unregistered firearm and aiding and abetting, in violation of 26 U.S.C. §§ 5845, 5861(d) and 18 U.S.C. § 2. After the entry of the guilty pleas, the district court applied the federal Sentencing Guidelines to sentence each defendant. Taylor received a 262-month term of imprisonment, to be followed by a three-year term of supervised release, and a $200 special assessment. Shawn Adams received a 168-month term of imprisonment, to be followed by a three-year term of supervised release, and a $200 special assessment. Catherine Adams received a 180-month term of imprisonment, to be followed by a three-year term of supervised release, and a $200 special assessment. Waskom received a 110-month term of imprisonment, to be followed by a three-year term of supervised release, and a $100 special assessment.

Because the defendants did not proceed to trial, the factual résumés accompanying their pleas, the Presentence Reports (PSRs) and their addenda,[1] preliminary and sentencing proceedings before the district court, and tapes admitted into evidence provide the background for the appellants' sentences. These sources reveal that in or about March 1997, the defendants entered into a conspiracy to commit a number of criminal acts that would culminate

---

[1]As a general rule, a PSR bears sufficient indicia of reliability such that the sentencing judge may consider it as evidence in making the factual determinations required by the guidelines. *See, e.g.*, *United States v. Alford*, 142 F.3d 825, 831-32 (5th Cir. 1998).

in the robbery of an armored car. The car they planned to rob routinely traveled to federally insured banks located in Bridgeport, Texas and Chico, Texas to pick up and deliver United States currency. In order to prevent law enforcement officers from responding adequately to the heist, the defendants intended to create a diversion by detonating several explosive devices at the nearby Mitchell Energy Corporation gas refinery. The defendants planned to finance their criminal activities by robbing two different individuals, whom they suspected to be narcotics traffickers.

Before the police interrupted the plan, the defendants took several steps toward accomplishing their goal. For example, the four conducted surveillance of one of the drug traffickers they had targeted, and Taylor traveled to Bridgeport and Chico to conduct surveillance of the armored car.

On March 29 and April 1, the defendants met to discuss plans for the robbery. They agreed that they should conduct a "test" detonation. On April 5, Shawn Adams, Catherine Adams, and Waskom met at the Adamses' residence, where they constructed two small explosive devices. They then traveled to the LBJ Grasslands and detonated the two devices. On April 6, Catherine Adams and Waskom went to the Mitchell Energy Corporation gas refinery to survey the facility. They drew a small sketch of the plant and the surrounding area. One week later, Shawn Adams, Catherine Adams, and Waskom met at the Adamses' residence to discuss the

4

construction of explosive devices. The three met again, two days later, to continue their discussions. Ultimately, the defendants settled on a plan to detonate explosive devices at the gas refinery and rob the armored car on May 1. Waskom informed his employer that he would be away from work on that day.

Unbeknownst to the four conspirators, a confidential informant had been recording their interactions and relaying their plans to law enforcement authorities since March. As a consequence, the defendants were arrested on April 22, before they could execute their plans. According to Detective Charles Storey, the lead investigating agent, the defendants' plan to rob one of the targeted drug traffickers on the evening of April 22 prompted the authorities to make the arrests that day.

II

On appeal, all four defendants argue that the district court erred in denying them a three-point reduction of their base offense level. This claim relates to § 2X1.1(b)(2) of the United States Sentencing Guidelines. In addition, Waskom raises several other issues pertaining to the district court's calculation of his sentence.

We review *de novo* the sentencing court's application of the federal Sentencing Guidelines and review for clear error its associated findings of fact. *See, e.g.*, *United States v. Goynes*, – F.3d –, 1999 WL 288261, at *2 (5th Cir. May 10, 1999). We uphold

a defendant's sentence "unless it was imposed in violation of law; imposed as a result of an incorrect application of the sentencing guidelines; or outside the range of the applicable sentencing guideline and is unreasonable." *United States v. Garcia*, 962 F.2d 479, 480-81 (5th Cir. 1992).

In addition to his specific challenges to his sentence, Taylor argues that the sentencing judge, the Honorable John McBryde, should have granted Taylor's motion for recusal pursuant to 28 U.S.C. § 455(a). Because the decision whether to recuse is within the discretion of the district court judge, we review for abuse of discretion the denial of a motion for recusal. *See United States v. Anderson*, 160 F.3d 231, 233 (5th Cir. 1998).

We begin with the issue that is common to all of the defendants: whether the district court properly denied them a three-level reduction under § 2X1.1(b)(2) of the United States Sentencing Guidelines. We then discuss the issues raised individually by Waskom and Taylor.

III

A

In cases of attempt, solicitation, or conspiracy, the federal Sentencing Guidelines direct the sentencing court to calculate the applicable offense level by using the base offense level from the guideline for the substantive offense, unless there is a specific offense guideline for the conspiracy charge that forms the basis of

6

the sentencing. *See* U.S. Sentencing Guidelines Manual § 2X1.1 (1997) (hereinafter U.S.S.G.).[2] After ascertaining the base offense level, the sentencing court makes adjustments from the substantive offense guideline for any intended offense conduct that is established with reasonable certainty. *See id.* In the case of conspiracy, the guidelines further direct:

> [D]ecrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

U.S.S.G. § 2X1.1(b)(2). The commentary accompanying § 2X1.1 explains this adjustment:

> In most prosecutions for conspiracies . . . , the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense. Under such circumstances, a reduction of 3 levels is provided under [§ 2X1.1(b)(2)].

U.S.S.G. § 2X1.1, comment. (backg'd). The focus of § 2X1.1(b)(2) is "on the conduct of the defendant, not on the probability that a conspiracy would have achieved success." *United States v. Medina*, 74 F.3d 413, 418 (2d Cir. 1996). In effect, the guideline "gives

---

[2]The PSRs and the district court relied on the 1997 *Guidelines Manual* to calculate the defendants' sentences. The subsequent amendments to the guidelines do not affect the provisions at issue here.

the defendant a three-level discount if he is some distance from completing the crime." *United States v. Egemonye*, 62 F.3d 425, 429 (1st Cir. 1995).

Determining whether a reduction under § 2X1.1(b)(2) is warranted necessarily requires a fact-specific inquiry. With its focus on the conspirators' conduct in relation to the object offense, the application of § 2X1.1(b)(2) thus resists a precise standard. This is particularly so in a case such as this, where there is no dispute that the defendants had not completed all the acts they believed necessary to commit the substantive offense and the question is only whether they were "about to" do so.

Certain principles nonetheless exist to guide a sentencing court's application of the guideline in this type of case. First, the § 2X1.1(b)(2) inquiry focuses on the substantive offense and the defendant's conduct in relation to that specific offense. *See United States v. Westerman*, 973 F.2d 1422, 1428-29 (8th Cir. 1992) (finding that the sentencing court erred in focusing on the conspirators' completion of an arson where the object offense was mail fraud); *United States v. Rothman*, 914 F.2d 708 (5th Cir. 1990) (holding that the relevant inquiry under § 2X1.1(b)(2) is the degree of completion of the underlying offense). Second, § 2X1.1(b)(2) does not require the reduction for a conspirator who has made substantial progress in his criminal endeavor simply because a significant step remains before commission of the

8

substantive offense becomes inevitable. *Cf. United States v. Knox*, 112 F.3d 802, 813 (5th Cir.) (upholding the district court's denial of the reduction despite the defendant's claim that he was unprepared to launder the full amount at issue), *vacated in part on other grounds*, 120 F.3d 42 (5th Cir. 1997); *United States v. Brown*, 74 F.3d 891, 893 (8th Cir. 1996) (noting that the reduction may be denied "even though a defendant had not reached the 'last step' before completion of the substantive offense"). Third, in order to support a denial of the reduction under § 2X1.1(b)(2), the circumstances must demonstrate that the balance of the significant acts completed and those remaining tips toward completion of the substantive offense. This requires that the district court consider the quality of the completed and remaining acts, not simply the relative quantities of each. *See United States v. Martinez-Martinez*, 156 F.3d 936, 939 (9th Cir. 1998) (considering the substantiality of the steps remaining before the defendants could complete the substantive offense). Fourth, a sentencing court should consider the temporal frame of the scheme and the amount of time the defendant would have needed to finish his plan, had he not been interrupted. As the completion of the offense becomes more imminent, the reduction will become less appropriate. *See* U.S.S.G. § 2X1.1(b)(2) & comment. (backg'd). Fifth, the sentencing court should assess the conspirator's degree of preparedness to accomplish the remaining acts believed necessary to

9

complete the substantive offense. *See, e.g.*, *United States v. Khawaja*, 118 F.3d 1454 (11th Cir. 1997) (concluding that defendants were not about to complete the acts they believed necessary to launder the remaining balance of the funds at issue because they "had not taken crucial steps [such as] preparing falsified documentation, securing cashier's checks, or arranging meetings for the exchange"); *United States v. Sung*, 51 F.3d 92, 95 (7th Cir. 1995) (holding that a commodity counterfeiter had not completed all the acts he believed necessary to complete the substantive offense with respect to any sales of counterfeit goods beyond 17,600 bottles because he possessed only enough liquid to fill that number of bottles). Where conspirators are substantially prepared to complete the remaining acts they believe necessary for their plan, they are more likely to be "on the verge" of completing the substantive offense, U.S.S.G. § 2X1.1, comment. (backg'd), and are thus unlikely to deserve the reduction. *See, e.g.*, *United States v. Medina* 74 F.3d 413, 419 (2d Cir. 1996) (finding that conspirators--having procured a floor plan, firearms, handcuffs, ski masks, and a get-away vehicle for use during a robbery--were "about to complete" their planned offense when they were arrested as they approached the front door of the targeted business); *United States v. Chapdelaine*, 989 F.2d 28,35 (1st Cir. 1993) (concluding that conspirators were "about to complete" a robbery based on evidence that they "arrived . . . prepared and equipped to carry

10

out a robbery and were thwarted only by the unexpected early departure of the Wells Fargo truck"); *United States v. Johnson*, 962 F.2d 1308 (8th Cir. 1992) (upholding the denial of § 2X1.1(b)(2)'s reduction where, at the time of their arrest, the conspirators--possessing firearms, stolen vehicles, nylon stockings and stocking caps, and gloves--had pulled into the parking lots of the banks they planned to rob). These five considerations do not exhaust the factors that may be relevant in a given case, but they do provide a framework for assessing whether a § 2X1.1(b)(2) reduction is inappropriate because a conspirator was about to complete the acts believed necessary to accomplish the substantive offense.

B

With these principles in mind, we turn to the question whether the denial of a § 2X1.1(b)(2) three-level reduction was warranted in this case. Detective Storey, the lead investigator, testified at a preliminary hearing and at the two sentencing hearings. He provided an overview of the defendants' planning and the extent to which the defendants had taken the steps they believed necessary to complete the substantive offense underlying the conspiracy charge. His testimony revealed that significant aspects of the defendants' plan were uncertain or unrealized at the time of their arrest.

According to Detective Storey, the defendants backed out of their planned robbery of the targeted drug traffickers on two

11

occasions before April 22. Ultimately, the defendants never robbed either drug trafficker. The defendants also failed to obtain the component parts to construct the explosive devices needed to create the planned diversion at the gas refinery. At one point, Waskom had indicated that he would attempt to obtain two fifty-five gallon barrels of explosive material from an uncle in Chicago. It became apparent that he would not be able to do so, however, and the defendants consequently developed a contingency plan involving the use of a large pipe bomb. Detective Storey testified that Waskom never tried to obtain explosives from the Chicago uncle, who in fact may not have existed. Searches of the defendants' homes and vehicles did not turn up any pipe. Detective Storey suggested that the failure to recover any pipe indicated that the conspirators still needed to acquire pipe to manufacture the explosive devices. The defendants did possess a small amount of black powder, but Detective Storey testified that the quantity was insufficient to execute their plan to detonate several explosive devices. Detective Storey posited that, had the defendants succeeded in accomplishing the drug-trafficker robbery that they had contemplated, then they would have had money to purchase the items needed to construct the explosive devices. He acknowledged, however, that the underlying robberies had not occurred and that the defendants did not have money from any other source. As a consequence, at the time of their arrests, the defendants had not constructed any explosive devices to be used to create a diversion

12

during the robbery, nor did they even have the funds to do so.

That the conspirators were, in the words of Detective Storey, "still in the planning stages" is further evidenced by a recording of a conversation that the confidential informant and three of the defendants had just minutes before the defendants' arrests. During this conversation, the defendants discussed the manner in which they would plant the explosive devices and the way in which they would confront the armored car and bank personnel. Taylor stated that they still needed a vehicle or the assistance of other individuals to remove the money from the armored car. As an alternative, the defendants discussed the possibility of stealing the armored car itself. Taylor observed, "I don't know if May first is pushing it, well [*sic*] we go back to June first or we can take May fifteenth or, it don't matter." Later in the conversation, he stated, "You know like I say we got way too much planning to do between now and then to [*sic*], let's see once, once we get this all figured out here, and get this down pact [*sic*], well then we can move on together to the decisions that we gotta make." Thus, moments before their arrest, these defendants believed that there were significant aspects of their plot that required additional planning, decisionmaking, and implementation.

The PSRs prepared for Waskom, Taylor, and the Adamses nonetheless advised that the three-level reduction was not applicable. The addenda to those reports stated that the

13

conspirators had completed all the acts they believed necessary for the successful completion of the substantive offense but were apprehended before implementing their final plans. According to the addenda,

> The conspirators had conducted extensive surveillance of the armored car, the car's route, the gas refinery, and escape routes for leaving the area. They had obtained pipes, fittings, and manuals with the full intention of making the destructive devices. They had exploded two prototypes in preparation for building the large devices and had begun to make back up plans to use readily available black powder in the bombs. It is evident that the plan was on schedule and would have been completed if the defendants had not been arrested. A three level reduction should not be applied.

The district court overruled the defendants' objections to the PSR's recommendation, adopted the PSR's findings and conclusions, and denied the three-level reduction under § 2X1.1(b)(2). In rendering his decision, the sentencing judge stated:

> I . . . find that they were far enough along that they were about to complete all such acts but for their apprehension. There were, as the witness, Storey, indicated, two things lacking to make it as elaborate as they had discussed, and that is more black powder and some pipe. But they certainly had it within their means to obtain those things readily, and even if they didn't they had something in their control that could cause a lot of damage and certainly create the diversion.
>
> And the fact that one of the conspirators had already arranged to be off work on the day they had discussed doing it, would certainly be a strong indication that they were ready to do it. So I'll overrule that objection.

After thoroughly reviewing the record, we conclude that the district court clearly erred in concluding that, at the time of their arrest, the conspirators were about to complete all the acts

14

they believed necessary to rob the armored car. We reach this conclusion because the conspirators' plan required significant steps to be taken before they could complete the substantive offense. The record reveals that the acts the defendants believed they needed to accomplish for the success of the armored-car robbery were far more complex than any acts they had actually committed and their completion of the remaining acts was neither imminent nor a foregone conclusion. Successful completion of the acts leading up to the robbery of the armored car would have entailed the commission of the planned robberies of the suspected drug traffickers; the purchase of component parts for the explosive devices; the assembly, planting, and carefully timed detonation of those devices; and formulation and execution of a concrete plan of attack to make off with the contents of the armored car. At the time of their arrest, the defendants had taken none of these steps.

Of particular importance to the district court's decision to deny the § 2X1.1(b)(2) reduction was the fact that Waskom had arranged to be away from his job on May 1, the target date for the robbery. According to the sentencing judge, this indicated that at least one of the defendants thought the offense was "complete enough" and that the conspirators were "ready" to commit the robbery. Although Waskom's plan to be away from work is of some persuasive value, it is more indicative of his belief that the group would be prepared to commit the robbery by that date than a finding that the group was already equipped to do so. Further,

15

that Waskom set aside the target date becomes less weighty when considered in the context of the defendants' penchant for selecting dates to commit robberies only to back out as the time for action approached.[3] When viewed in light of the full record, Waskom's plan to be away from work on May 1 does not persuade us that the defendants were about to complete the armored-car robbery at the time of their arrest on April 22.

Despite uncontroverted evidence that the conspirators lacked the component parts to construct the explosive devices and had insufficient resources to secure those materials, the district court concluded that "they had it within their means to obtain those things readily." This finding is not supported by the record. In the alternative, the court found that they possessed "something . . . that could cause a lot of damage and certainly create the diversion." In reaching this conclusion, the court presumably relied on the testimony that the conspirators possessed a small amount of black powder, which could have been used to

---

[3]According to the PSRs, the conspirators initially planned to rob the first drug trafficker on March 25, the second on March 30, and the armored car on April 2, but they did not meet any of these target dates. They also planned to rob an individual on April 15 but did not do so. April 22, the day the defendants were arrested, was the next target date for the robbery of a drug trafficker. The defendants had pushed back the scheduled date of the armored car robbery to May 1 but, on the day of their arrest, discussed the prospect of another postponement because significant preparations remained. The record thus reveals a pattern of delay on the part of the conspirators in taking certain steps they believed necessary to complete the substantive offense--a pattern that continued up to the moments before their arrest.

16

construct a single pipe bomb with the potential to damage the energy facility and cause injuries. Given the fact that the authorities were unable to recover any pipe, this conclusion is speculative. More importantly, there is no indication in the record that the defendants would have proceeded if they had been unable to construct the size and number of explosive devices they had planned to detonate at the plant.

Although the district court may very well have been correct that the defendants *eventually* would have secured the materials they needed to construct the explosive devices, the relevant question is whether they were *about to* do so. The record is clear that, at the time of their arrest, the defendants lacked the resources and materials they needed for their plan and were thus unprepared to accomplish the remaining acts they believed necessary to rob the armored car without interference from the authorities. Certainly, the defendants had taken steps in furtherance of their conspiracy. Those steps, however, pale in comparison to the acts remaining to complete the intended offense. In sum, the record does not support a finding that, at the point of their arrests, the defendants were on the verge of completing the acts they believed necessary to commit the substantive offense of robbing the armored car. We therefore find that the district court clearly erred in denying the three-level reduction under § 2X1.1(b)(2).

C

17

With the benefit of the § 2X1.1(b)(2) discount, the adjusted offense levels for Taylor and the Adamses allow ranges of imprisonment below the actual sentences imposed, so the error was not harmless. *See United States v. Mills*, 9 F.3d 1132, 1139 (5th Cir. 1993). Accordingly, we vacate the sentences of Taylor, Shawn Adams, and Catherine Adams and remand for resentencing.

Based on the assistance that Waskom provided the government, he received a downward departure pursuant to § 5K1.1 of the guidelines. Although his guideline range of imprisonment was 168 to 210 months, Waskom was sentenced to a 110-month term of incarceration. With the benefit of the three-level reduction, Waskom's guideline range of imprisonment is 121 to 151 months. The Supreme Court has held that, if "the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, . . . that the error did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203, 112 S. Ct. 1112, 1120-21 (1993). Although Waskom's sentence falls below the corrected guideline range, we cannot conclude that the § 2X1.1(b)(2) error was harmless. Waskom's 110-month sentence was the result of a significant downward departure based on the government's motion pursuant to § 5K1.1 of the Guidelines and the sentencing judge's finding that Waskom substantially assisted the government. We cannot discern from the record whether the

18

sentencing judge would have imposed the same sentence had he been departing from the range set by an offense level of thirty-two, instead of thirty-five. *See United States v. Bush*, 70 F.3d 557, 560 n.3 (10th Cir. 1995) (stating that an error in calculating the base offense level was not harmless because it might have affected the extent of the § 5K1.1 downward departure that had resulted in a sentence falling below the corrected sentencing range). As it is the prerogative of the district court, in the first instance, to determine the degree of departure warranted by a defendant's assistance, we vacate Waskom's sentence and remand for resentencing.

IV

Waskom raises several additional issues pertaining to the calculation of his sentence. We address each in turn.

A

Waskom argues that the district court erred in applying § 2X1.1 of the Guidelines. Waskom pleaded guilty to conspiracy to obstruct and delay interstate commerce by robbery and physical violence, in violation of 18 U.S.C. § 1951. In the case of conspiracy, the offense level is to be determined in accordance with the provisions of § 2X1.1, unless a specific offense guideline expressly covers the conspiracy charge at issue. *See* U.S.S.G. § 2X1.1. Before the district court, Waskom objected to the PSR's application of § 2X1.1, arguing that there was no partially

19

completed offense. In response, his PSR's addendum set forth facts to demonstrate that the offense was partially completed. Waskom then filed several objections to the PSR's addendum but stated that he "accept[ed] the Addendum" as it pertained to his initial § 2X1.1 objection.

On appeal, Waskom asserts in wholly conclusory fashion that "there was no 'partially completed' offense" and that the district court therefore erred in applying § 2X1.1 for the calculation of his offense level. In seeking the benefit of the three-level reduction under § 2X1.1(b)(2), however, Waskom urges that § 2X1.1 should apply to his case. Because Waskom acceded below to the application of § 2X1.1, has presented this Court with no substantive basis to find this provision inapplicable, and argues that it does apply for purposes of the reduction under § 2X1.1(b)(2), we find that Waskom has waived his challenge to the applicability of § 2X1.1. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). The district court did not err in applying § 2X1.1 in calculating Waskom's sentence.

B

Waskom also argues that the district court erred by refusing to decrease his offense level pursuant to § 3B1.2(a) of the Guidelines, which provides for a four-level reduction if the defendant was a minimal participant in the offense. The commentary accompanying the guideline notes that § 3B1.2(a)'s reduction

> applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

U.S.S.G. § 3B1.2, comment. (n.1). The commentary further directs that "[i]t is intended that the downward adjustment for a minimal participant will be used infrequently." *Id.*, comment. (n.2). Only those rare defendants who are "substantially less culpable than the average participant" in a conspiracy will warrant the reduction under § 3B1.2. *Id.*, comment. (backg'd).

The PSR did not recommend that Waskom receive a reduction in his offense level for his role in the offense, and Waskom objected. The district court overruled Waskom's objection but indicated that, in determining where to sentence Waskom within the applicable guideline range, it would consider his conduct in relation to that of the other conspirators. As with other sentencing-related factual findings, this court reviews for clear error the district court's determination that a defendant did not play a minimal role in the offense. *See United States v. Zuniga*, 18 F.3d 1254, 1261 (5th Cir. 1994).

The PSR established that Waskom was more than a minimal participant in the conspiracy. Waskom conducted surveillance of one of the drug traffickers whom the defendants planned to rob; accompanied his co-defendants to complete that robbery, which was

21

aborted due to an unforeseen complication; discussed plans for the robberies with his co-defendants; showed the Adamses a model of an explosive device that the defendants intended to use; advised the informant that he planned to obtain powerful explosive material in two 55-gallon drums from his uncle in Chicago; accompanied his co-defendants to observe the detonation of two explosive devices; conducted surveillance of the gas refinery and drew a sketch of the plant and its surrounding area; and discussed building the explosive devices and backup plans for obtaining the explosive devices with his co-defendants. As his PSR's addendum aptly stated, Waskom "was aware of the scope and target of the offense, the planned diversionary explosions, and the possibility of the explosions causing injuries or death to innocent victims." In light of these facts, the district court did not err in denying the reduction under § 3B1.2.

C

The remaining issues raised by Waskom pertain to increases in his offense level based on specific offense characteristics. Waskom argues that the district court erred by increasing his offense level pursuant to § 2B3.1(b)(1), (b)(2), and (b)(3)(C) of the Guidelines. The PSR recommended each of these enhancements, and the district court overruled Waskom's objections to the increases. In considering Waskom's challenges to the offense-specific increases, we adhere to § 2X1.1, which set Waskom's base offense level by reference to the guideline for the substantive

22

offense. Section 2X1.1 directs that adjustments be made "for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). Thus, Waskom's sentence accounts for conduct that he specifically intended, even if the conduct did not actually occur. *See id.* § 2X1.1, comment. (n.2).

Section 2B3.1(b)(1) directs a two-level increase "[i]f the property of a financial institution was taken." Waskom's PSR recommended the enhancement under § 2B3.1(b)(1), asserting that the property of a financial institution was the target of the offense. As he did below, Waskom contends that the object of the offense was an armored car, not a financial institution, and that the car might well have contained payrolls and receipts, instead of financial institution property. The PSR noted that the targeted armored car routinely traveled through Bridgeport and Chico, making regular pick-ups and deliveries at federally insured banks. The PSR further stated that one of Waskom's co-conspirators conducted surveillance on the armored car as it made deliveries to the banks. The district court did not clearly err by determining that the taking of the property of a financial institution was an object of the offense.

Waskom next argues that the district court erred by increasing his offense level by six pursuant to § 2B3.1(b)(2), which directs such an increase if a firearm was "otherwise used." A "firearm" includes a destructive device such as the explosive devices the

23

defendants planned to detonate at the gas refinery, and "otherwise used" is defined as conduct that "did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1, comment. (nn.e & g); *accord United States v. Burton*, 126 F.3d 666, 678 (5th Cir. 1997). Before the district court and this Court, Waskom argued that the enhancement applies only to the use of a firearm during the commission of the substantive offense. Waskom also claimed that the enhancement should not apply because he had not pleaded guilty to the firearms charge that appeared in the superceding indictment filed against the other defendants. The district court overruled Waskom's objection, finding that the information in the PSR "establishe[d] with reasonable certainty that the defendants, as part of their conspiracy, intended to use an explosive device or firearm."

The PSR stated that the defendants constructed bombs and exploded the bombs in furtherance of the scheme to carry out the planned robbery. The construction and detonation of the bombs constituted more than brandishing, displaying, or possessing the dangerous weapons. Further, the defendants intended to detonate more bombs as a diversionary tactic during the commission of the robbery. In light of these facts, the district court did not err in determining that there was a reasonable certainty that a destructive device would be "otherwise used" during the commission

24

of the offense. Once the record established with reasonable certainty that the conspirators intended to detonate explosive devices at the gas refinery, the defendants became subject to the corresponding adjustment for such conduct, even though they did not accomplish their planned acts and regardless of whether they were charged with a separate firearms offense.

Waskom's challenge to the adjustment pursuant to § 2B3.1(b)(3)(C) also fails. Section 2B3.1(b)(3)(C) directs a six-level increase in the base offense level for the robbery if any victim sustained permanent or life-threatening bodily injury. *See* U.S.S.G. § 2B3.1(b)(3)(C).[4] The PSR recommended this enhancement because the defendants planned to cause permanent or life-threatening bodily injury by using diversionary explosives and targeting the maximum number of law enforcement personnel possible. The PSR stated that the defendants planned to make anonymous telephone calls to local law enforcement agencies advising of the existence and location of a bomb to ensure that numerous officers would be present when the explosive devices were detonated. According to the PSR, the defendants were fully aware that the planned diversionary explosion would probably kill many people, primarily law enforcement personnel, but showed no concern about

---

[4]Although Waskom warranted a six-level increase under § 2B3.1(b)(2) and a six-level increase under § 2B3.1(b)(3)(C), he received an eleven-level increase under these two provisions because the the guideline directs that the cumulative adjustments under § 2B3.1(b)(2) and (3) should not exceed eleven.

25

that effect.  Indeed, one of Waskom's co-conspirators told the confidential informant that a nearby state prison might be blown up due to the anticipated size of the planned explosion and that he planned on placing bombs in locations where they would "hurt the most cops."  The PSR noted that case agents had reviewed the conspirators' plans and the refinery's lay-out and had concluded that the destruction intended by the defendants could have happened as planned.  The PSR concluded that, had the defendants had not been arrested prior to execution of their plan, they would have caused permanent or life-threatening bodily injury and probably death.

The district court determined that "the defendants, as part of their conspiratorial activities, did intend in relation to the robbery and the overall events related to the robbery of the armored vehicle to cause permanent or life-threatening bodily injury," and that such intent was "established with reasonable certainty."  Waskom's complaint that the adjustment is warranted only in cases in which the injury actually occurs is unavailing under § 2X1.1.  Because the guideline allows adjustments for intended offense conduct that is established with a reasonable certainty, the district court did not err in increasing Waskom's offense level under § 2B3.1(b)(3)(C), as the PSR demonstrates with reasonable certainty that the defendants intended that their victims would sustain permanent or life-threatening bodily injuries.

26

V

Pursuant to 28 U.S.C. § 455(a), Taylor moved for the recusal of the presiding judge, the Honorable John McBryde, and reassignment of his case to a different district court judge within the Northern District of Texas. The proffered ground for recusal was the appearance of Taylor's attorney, Paul D. Stickney, as a subpoenaed witness before a special investigatory committee of the Fifth Circuit Judicial Council. During those proceedings, Stickney provided testimony adverse to Judge McBryde. The district court denied Taylor's motion and proceeded to accept his guilty plea and impose the challenged sentence. Taylor now appeals the district court's denial of his motion for recusal. Taylor seeks only to be resentenced. Our decisions in *United States v. Anderson*, 160 F.3d 231 (5th Cir. 1998), and *United States v. Avilez-Reyes*, 160 F.3d 258 (5th Cir. 1998), dictate the resolution of Taylor's appeal. Those cases involved similar motions under 28 U.S.C. § 455(a) by defendants represented by Stickney after his testimony before the Judicial Council. We held that Judge McBryde abused his discretion and committed reversible error in failing to recuse himself. We reached this conclusion notwithstanding the fact that neither Anderson nor Avilez-Reyes alleged a specific sentencing error other than the failure to recuse. Here, Taylor challenges not only the denial of his recusal motion, but also the four-level enhancement under § 3B1.1 of the Guidelines, based on his role in the offense,

27

and the denial of the three-level reduction under § 2X1.1. In accordance with our holdings in *Anderson* and *Avilez-Reyes*, we vacate Taylor's sentence and remand for a new sentencing proceeding before a different district court judge in the Northern District of Texas.[5]

## VI

For the foregoing reasons, we vacate the defendants' sentences with respect to the denial of the three-level reduction under § 2X1.1(b)(2), and we remand for resentencing in accordance with this opinion. With respect to the enhancements of Waskom's offense level pursuant to § 2B3.1(b)(1), (b)(2)(B), and (b)(3)(C) and the denial of a reduction under § 3B1.2(a), we find no clear error. Finally, because the district court abused its discretion in denying Taylor's motion to recuse pursuant to 28 U.S.C. § 455(a), we vacate his sentence and remand for new sentencing proceedings before a different district court judge within the Northern District of Texas.

VACATE AND REMAND.

---

[5]Because Taylor is to be resentenced, we do not address his claim that the four-level increase of his offense level, pursuant to § 3B1.1 of the Guidelines, was improper.

28